EMMA I. FAIRGRIEVE, by her next friend, Appellant, v. CITY OF MOBERLY, Respondent.

Kansas City Court of Appeals, February 6, 1888.

1. PRACTICE—EVIDENCE—WHEN NOT ADMISSIBLE, BUT NOT OBJECTED TO.—Although improper evidence may be admitted, as in this case, and although the effect of it may not be cured by telling the jury, in an instruction, to disregard it, yet if no proper objection was made at the trial, it cannot be made available here.

2. ——— EXCEPTIONS TO ACTION OF TRIAL COURT.—An exception at the time is essential, in order to afford the trial court an opportunity to correct its error, and prevent a mistrial.

3. ——— MISCONDUCT OF JUDGE—EFFORT TO BRING ABOUT AGREEMENT BY JURY NOT SUCH — LIMIT OF PROPER INTERFERENCE. In such contingencies, as the report by a jury of inability to agree upon a verdict, the trial courts cannot be too careful of unduly influencing the mind of the jury ; but within proper bounds, and especially in cases where, from the character of the issue and the evidence, there can be little toleration of obvious unreasonable obstruction to an agreement, the court may urge upon the jury the propriety and importance of reaching a conclusion under the law and the evidence.

4. ——— VERDICT — SMALLNESS OF DAMAGES — WHEN APPELLATE COURT WILL INTERFERE.—Although the general rule is, that, in actions founded upon torts, and sounding merely in damages, the appellate courts will not interfere solely on account of the smallness of the damages allowed by the jury (with the exception, however, that it does not apply to actions *ex contractu,*.

nor where the verdict is the result of fraud or misconduct) ; yet where the damages, under the circumstances, are such as to "shock the understanding," and induce the conviction that the verdict was the result of either passion, prejudice, or partiality, the court should interfere.

5. —— INSTRUCTIONS—SHOULD BE LIMITED TO THE ISSUES.—Issues not presented by the pleadings should not be submitted by instructions. Neither should instructions submit mere abstractions, not predicated of the facts ; nor announce legal principles which have no application to the case ; nor submit matters not supported by any evidence ; nor put the burden of proof where it does not belong ; nor declare, as matter of law, what should be submitted to the jury.

APPEAL from Macon Circuit Court, HON. ANDREW ELLISON, Judge.

*Reversed and remanded.*

The case and facts are stated in the opinion of the court.

HOLLIS & WILEY, for the appellant.

I.   The court erred in overruling plaintiff's motion for a new trial and in arrest.   *Welsh v. McAllister,* 13 Mo. App. 89 ; 2 Sedgwick on Damages [7 Ed.] 66 ; 38 Wis. 300 ; 40 N. Y. 551 ; *Railroad v. Ashcraft,* 48 Ala. 15 ; 26 Wis. 648 ; 2 Thomp. on Neg., sec. 58, p. 1266 ; Field on Dam., sec. 886 ; *Reid v. Ins Co.,* 58 Mo. 421 ; *State v. Alexander,* 66 Mo. 163-4 ; *Edens v. Railroad,* 72 Mo. 212.   Damages must be left largely to the discretion of the jury.   It, however, is not at liberty to give any sum it pleases.   *Waldhier v. Railroad,* 87 Mo. 38. The jury, in estimating plaintiff's damages, should consider every fact in the case which tended to increase the amount of her pain, or the extent of her injuries.   *Blair v. Railroad,* 89 Mo. 384 ; *Price v. Evans,* 49 Mo. 396 ; *Rose v. St. Charles,* 49 Mo. 509 ; *Pritchard v. Hewit,* 91 Mo. 547.

II.   The instructions refused on the part of plaintiff should have been given.

III. Instructions one, two, four, six, eight, nine, and ten for defendant are abstract, faulty, erroneous, based upon nothing, calculated to mislead, and should not have been given. *Raysdon v. Trumbo*, 52 Mo. 35, 297; *Givens v. Van Studdiford*, 4 Mo. App. 499; *Bowen v. Railroad*, 75 Mo. 426, 437; *Condon v. Railroad*, 78 Mo. 567; *Homan v. Ins. Co.*, 9 Mo. App. 596; *Pipkin v. Haucke*, 15 Mo. App. 373.

IV. It was an error to permit defendant's counsel to ask, and witness to answer, the following: "Q. You may state whether or not it is a good and safe crossing. A. It was. Q. Could a person with ordinary prudence go over it with safety? A. Yes, sir." *Eubank v. City of Edina*, 88 Mo. 650; *Roberts v. Lynch*, 15 Mo. App. 456; *Koons v. Railroad*, 65 Mo. 593; *Robertson v. Railroad*, 84 Mo. 119; *Brown v. Plank Road Co.*, 89 Mo. 152.

V. It was error to permit defendant's witnesses (councilmen) to testify as to what they thought the father of plaintiff said about plaintiff's having been hurt by playing on the timbers, and then instructing on it as evidence against plaintiff. This could only be admitted to impeach the testimony of the father, and was incompetent for any other purpose. *O'Neal v. Crane*, 67 Mo. 250; *Fougue v. Burgiss*, 71 Mo. 389; *Sherlock v. Kimmell*, 75 Mo. 77.

VI. It was error for the court to say to the jury: "This is no verdict. The costs are very heavy and another trial would incur very large costs, and for that reason you should agree on a verdict." *Edens v. Railroad*, 72 Mo. 212; *State v. Alexander*, 66 Mo. 163–4; *Chinn v. Davis*, 21 Mo. App. 363, and cases cited therein.

VII. The verdict should be set aside on account of the attempt of officer Forney and witness Thomas to influence the jury. *Bradbury v. Coney*, 62 Mo. 223; *McDaniels v. McDaniels*, 7 Am. Law Reg. [N. S.] 729; Hilliard on New Trials [2 Ed.] 207; *State v. Andrews*, 29 Conn. 104; *Heffron v. Galloupe*, 55 Me. 563;

*Irwin v. Bulla,* 29 Ind. 95 ; 38 Georgia, 216 ; 34 Ga. 379 ; 2 Vroom [N. J.] 52.

BEN. T. HARDIN, for the respondent.

I. This court will not reverse on account of the smallness of the damages. *Pritchard v. Hewitt,* 91 Mo. 548 ; *Gregory v. Chambers,* 78 Mo. 294.

II. The motion for new trial did not set up error in refusing instructions, and this court will, therefore, not consider it. *Light v. Railroad,* 89 Mo. 108 ; *Howard Co. v. Burckhartt,* 83 Mo. 43 ; *Gaines v. Fender,* 82 Mo. 497 ; *State v. Burnett,* 81 Mo. 120 ; *State v. Emory,* 79 Mo. 461 ; *State v. Preston,* 77 Mo. 294 ; *Wakefield v. Richardson,* 77 Mo. 589 ; *Anthony v. Railroad,* 76 Mo. 18 ; *Rucker v. Rucker,* 59 Mo. 17 ; *Matlock v. Williams,* 59 Mo. 105 ; *Wetherall v. Harris,* 51 Mo. 65 ; *Brady v. Connelly,* 52 Mo. 19 ; *Carver v. Thornhill,* 53 Mo. 283 ; *Rotchford v. Cramer,* 65 Mo. 48 ; *Bollinger v. Carrier,* 79 Mo. 318 ; *Kimberlin v. Short,* 24 Mo. App. 646 ; *Hoffheimer v. Losen,* 24 Mo. App. 653 ; *Kauffman v. Harrington,* 23 Mo. App. 572 ; *City v. Dusky,* 19 Mo. App. 20 ; *Schlicker v. Gordon,* 19 Mo. App. 479 ; *Joyce v. Murnaghan,* 17 Mo. App. 11.

III. And the instructions given by the court for both plaintiff and defendant, taken together, fully covered the case, and that is sufficient. *Hamy v. Brasher,* 51 Mo. 439 ; *Porter v. Harrison,* 52 Mo. 524 ; *State v. Holme,* 54 Mo. 153 ; *Brownlee v. Hewitt,* 1 Mo. App. 360 ; *Karle v. Railroad,* 55 Mo. 476 ; *Meyers v. Railroad,* 59 Mo. 223. It is not error to refuse certain instructions, if those given fully present the law of the case. *Stanley v. Brokerage Co.,* 85 Mo. 411 ; *Baum v. Fryrear,* 85 Mo. 151 ; *State v. Kelley,* 85 Mo. 143 ; *State v. Cooper,* 83 Mo. 698 ; *State v. Thompson,* 83 Mo. 257 ; *Ins. Co. v. Hauck,* 83 Mo. 21 ; *Cooper v. Johnson,* 81 Mo. 483 ; *Harris v. Lee,* 80 Mo. 420 ; *Condon v. Railroad,* 78 Mo. 567 ; *Nugent v. Curran,* 77 Mo. 323 ; *McGonigle v. Daugherty,* 71 Mo. 259 ; *Railroad v. Waldo,* 70 Mo.

629 ; *Whetstone v. Shaw*, 70 Mo. 575 ; *Deggendorf v. Bartholew*, 69 Mo. 189 ; *White v. Graves*, 68 Mo. 218.

IV. The error of which appellant complains in point IV. is not a reversible one, because appellant opened up the investigation with his own witnesses. Appellant cannot be heard to allege that, as error of the trial court, which he invited the court to commit. *Holmes v. Braidwood*, 82 Mo. 616, 617 ; *State v. Beaty*, 25 Mo. App. 214 ; *Dunn v. Henly*, 24 Mo. App. 579 ; *Loomis v. Railroad,* 17 Mo. App. 340. Again, the record shows that when the questions were asked by respondent's counsel as to the safety of the crossing, appellant merely made a general objection. This court will not consider objections to evidence not specifically made, showing grounds of objection. *Holmes v. Braidwood*, 82 Mo. 610 ; *Allen v. Mansfield*, 82 Mo. 688 ; *Baier v. Berberich*, 85 Mo. 50. "Objections to the admission of evidence in the trial court will not be considered by this court, unless the record shows that the grounds of objection were sufficiently specified at the time of the introduction of the testimony." *Johnson v. Railroad*, 22 Mo. App. 597 ; *Davis v. Hilton*, 17 Mo. App. 319 ; *Rhorer v. Brockhage*, 15 Mo. App. 17 ; *Kelley v. Clancy*, 15 Mo. App. 519 ; *Shelton v. Durham*, 76 Mo. 434 ; *Primm v. Raboteau*, 56 Mo. 407 ; *Margrave v. Ausmuss*, 51 Mo. 561 ; *Bauer v. Franklin Co.*, 51 Mo. 205 ; *Baker v. Crandall*, 78 Mo. 592, and cases cited ; *Lohart v. Buchanan*, 50 Mo. 201. Nor unless called to the attention of the trial court in the motion for new trial. *Wakefield v. Richardson*, 77 Mo. 589 ; *Snell v. Harrison*, 83 Mo. 652. And it is not sufficient that exceptions were duly taken at the trial. *Bank v. Allen*, 68 Mo. 474.

V. If it was error to admit in evidence as to what the father of plaintiff had said, it was harmless, and, therefore, not reversible. *Kinealy v. Burd*, 9 Mo. App. 359 ; *Moffett v. Turner*, 23 Mo. App. 194 ; *Stern v. Auction Co.*, 16 Mo. App. 473 ; *Society v. Fitzwilliam*, 12 Mo. App. 445 ; *Reber v. Tower*, 11 Mo. App. 199 ; *Bir-*

*ney v. Shark,* 78 Mo. 73; *Anderson v. Shockley,* 82 Mo.
250. Besides, plaintiff made no objections to the admission of such evidence, nor saved any exceptions thereto.

VI. The authorities under paragraph VI. do not apply. The opinion in *Chinn v. Davis,* 21 Mo. App. 363, lays down the true doctrine as adopted by this court. And that decision goes only to the extent that it is improper for a trial judge to communicate with the jury after the cause is committed to them, "unless in open court." It is not contended, in this case, that the court below communicated with the jury in any other way than in open court. In the case of *Edens v. Railroad,* 72 Mo. 212, the judge urged the jury to "compromise," thereby invading their province. Again, in no place does the bill of exceptions show that appellant objected or saved any exceptions, at the time, to the remarks of the court to the jury; and appellant is out of shape here on that point. Thompson, Charging the Jury, p. 155, sec. 115, and cases there cited; also authorities on point IV. herein.

VII. The verdict should not be set aside "on account of the attempt of officer Forney and witness Thomas, to influence the jury." The court heard affidavits *pro* and *con.,* and the presumptions are in favor of the actions of the court below. *State v. Burns,* 85 Mo. 47; *Porth v. Gilbert,* 85 Mo. 125; *Goode v. Crow,* 51 Mo. 212; *State v. Co. Court,* 51 Mo. 522; *Acock v. Stewart,* 57 Mo. 150; *Stephens v. City of Macon,* 83 Mo. 345; *State v. Hill,* 65 Mo. 84; *Whitsett v. Ransom,* 79 Mo. 258; *Cook v. Railroad,* 56 Mo. 380; *State v. Smith,* 65 Mo. 313. As to Forney, after seeing his affidavit, and those of the twelve jurors, the judge could have found in no other way than as he did. As to the misconduct of the jury, the refusal of the trial court to grant a new trial, where affidavits are heard, is no ground for reversal, unless it appears that there was an abuse of judicial discretion in the trial court. *Morgan v. Ross,* 74 Mo. 318. But the judge had a perfect right to urge the jury to agree, and to communicate with the jury in open

court; and the publicity of the communication guards it from all objection, as well as impropriety. Thomp. Charging Jury, sec. 58; Thompson & Merriam on Juries, sec. 356; *Allen v. Woodson,* 50 Ga. 53; *Pierce v. Rehfuss,* 35 Mich. 53. And the presumptions are that the jury acted regularly, and plaintiff must show that they were prejudiced by the witness, Thomas, and others. But their action seems to have worked a prejudice, if at all, in favor of plaintiff.

PHILIPS, P. J.—This is an action for the recovery of damages for personal injuries sustained by plaintiff consequent upon falling from one of defendant's sidewalks, or street-crossings. The plaintiff, at the time of the injury, was about ten years old. The defendant is a municipal corporation. By ordinance defendant directed the laying down of a sidewalk along one of its streets, and where this street intersected with another street it directed a crossing, of certain material and width, to be constructed across the intersecting street. The claim of plaintiff is, that neither the sidewalk nor the crossing were constructed according to ordinance; and that especially the latter was so negligently and badly constructed as to leave it in a dangerous and unsafe condition for the use of foot-passengers having occasion to use the same; and further, that, on its completion, the servants of defendant left lying alongside of, and near to, this footway, timbers, left over from the work of construction, so that any one falling from this footway would be precipitated some twenty inches or more onto these timbers, with the liability to injury greatly increased thereby.

Plaintiff's evidence tended to support the allegations of the petition. It further showed that the plaintiff, in passing over this crossing, on her way carrying dinner in a basket to her mother, slipped on this slanting walk—it being muddy and slippery from rain—and fell onto said timbers, breaking her ankle, from which she was greatly injured, etc.

The defendant's evidence tended to show that the crossing was well constructed, and that, by walking in its center, within a space of about twenty-six inches, a foot-passenger, exercising ordinary care, could pass with safety. It also offered some evidence tending to show that the timbers in question were not so near the footway as claimed by plaintiff.

The jury returned a verdict for the plaintiff, assessing her damages at one dollar. Plaintiff prosecutes this appeal.

The *gravamen* of the plaintiff's appeal, of course, is the meager amount of damages awarded her. And for the purpose, chiefly, of showing that such a verdict was probably induced by the errors committed at the trial against the appellant, she has assigned many acts of the trial court alleged to be erroneous.

I. It is claimed that the court erred in permitting a witness for defendant to state to the jury that, in his opinion, the walk was sufficient and safe. This, of course, was improper. That was the very question the jury were to determine, from all the facts and circumstances in evidence; and no witness, of the character introduced in this case, could substitute his opinion for that of the trier of facts. Nor was the error cured by the fact that some other witness had been permitted, without objection, to express his opinion. One error does not authorize its repetition. *Charles v. Railroad*, 58 Mo. 461. Nor does the trial court always effectually remove the hurt of such evidence, especially after a contention over its admission, by telling the jury in an instruction to disregard it. But the plaintiff made no proper objection to this question. The bill of exceptions recites that, "plaintiff objected." This is, in contemplation of law, no objection at all. *Johnson v. Railroad*, 22 Mo. App. 600; *Steinkamp v. McManus*, 26 Mo. App. 53; *Holmes v. Braidwood*, 82 Mo. 613.

II. A number of witnesses on behalf of defendant testified to statements and admissions made by the father of plaintiff, tending to show that she received

her injuries while playing on the timbers near the said footway. This evidence was also admitted without proper objection by the plaintiff. The plaintiff's cause ought not to have been prejudiced by such evidence. If competent for any purpose, it was only for that of contradicting any evidence of the plaintiff in conflict therewith; and such contradictory statements should always be admitted with the proper restriction as to their office, and the jury should be told that it is not received as evidence of the facts admitted or stated by the witness, but only for purpose of impeachment. It was the office of the plaintiff, by timely objection, and proper instruction, to have its operation qualified and restricted.

III. It is further urged that this verdict was probably brought about by the misconduct of the trial judge. The bill of exceptions shows that, after the jury had been out some time, they returned into court and announced a disagreement, whereat the court observed: "This is no verdict. The costs are very heavy, and another trial would incur very large costs, and for that reason you should agree on a verdict." The plaintiff is again lame in this objection, as the bill of exceptions fails to show that she excepted, at the time, to the action of the court. An exception at the time is essential in order to afford the court an opportunity to correct its error, and prevent a mistrial. Thompson on Charging the Jury, sec. 115, p. 156; *State v. Ware*, 69 Mo. 333; *State v. Hayes*, 81 Mo. 574; *State v. Burnett*, 81 Mo. 119; *Smith v. Dunklin Co.*, 83 Mo. 195. Neither are we prepared to say the act of the court was error. The conduct of the judge in *Evans v. Railroad*, 72 Mo. 212, disapproved of, was this language, used toward a disagreeing jury: "Gentlemen, come back to-morrow morning with a determination to *compromise*." In *Chinn v. Davis*, 21 Mo. App. 363, the misconduct of the judge consisted in holding conversation, in whisper, with the foreman of the jury, not in the hearing of counsel. What was said by the

judge in this case was in open court, in hearing of all. There was nothing to imply a compromise—the yielding of any conviction of duty, *ab inconvenienti*, or any inclination of the court to the one side or the other. While the ancient custom of the *nisi* courts, in coercing a verdict from juries, by keeping them locked up, and on stinted diet, during a whole term of court, and, if no agreement had then been reached, by carting them around the circuit under close surveillance, is happily not one of our proud heritages from the "matchless common law," it would, nevertheless, we think, be going to the very extreme of abnegation in the judge presiding over our jury trials, to say that he could do nothing, in open court, calculated to impress an obstinate jury with the importance, both to the litigants and the public, of reconciling their differences. In *Allen v. Woodson*, 50 Ga. 53, the trial judge said to the jury: "This case has been troublesome, and has cost much time and trouble to investigate it; therefore, there should be a verdict." This was not disapproved. In *Pierce v. Rehfuss*, 53 Mich. 66, the court told the jury to endeavor to reconcile their views and arrive at a verdict, if consistent with the conscience, rather than the parties should be put to the trouble and expense of trying the case again. The action of the court was rather commended than disapproved of. The trial courts, in such contingencies, cannot be too careful of unduly influencing the mind of the jury, or swerving them from the dictates of an enlightened, conscientious, judgment; but within proper bounds, and especially in cases, where, from the character of the issue and the evidence, there can be little toleration of obvious unreasonable obstruction to an agreement, the court may urge upon the jury the propriety and importance of reaching a conclusion under the law and the evidence.

IV. On the real merits of this appeal, we confess to some surprise, on reading over the evidence in this record, at the verdict of the jury. The plaintiff made out a strong case for remunerative damages. By find-

ing the issues for the plaintiff, the jury found (1) that she had been injured; (2) that this injury was the result of defendant's misconduct and carelessness in respect of its footway. Having so found, there remained but one duty for the jury to perform, under their oath, and that was to ascertain the extent of plaintiff's injury, and award her a reasonable and just compensation therefor, having regard to her age, her physical and mental suffering, and a view to the permanent or temporary character of such injury. That her injuries were such as to entitle her to substantial, rather than mere nominal, damages, no unprejudiced mind can read the evidence and question for one moment. There was no unlimited field for speculation, no reasonable ground for any sound mind to doubt that she was hurt, and that badly. She was found with her foot fastened between the timbers, crying piteously for help. Her father, a physician, carried her in his arms to his home near by. Leaving out of view altogether his testimony, that her ankle was fractured, and the evidence of all other non-experts, the testimony of other disinterested and reputable physicians and surgeons attests the fact that her injuries were serious, if not permanent. Dr. Weems, who called to see her a few days after the injury, testified that he found the ankle swollen and very painful to the touch. She could not move it. Afterwards he examined it again and found the *tibia* bone fractured; that he thought the joint permanently injured. She was confined to her bed for several months. The ankle is smaller than the other. It doesn't develop. The ligaments were badly strained and injured. He called it a green fracture. There is a callous now which shows the fracture, not broke in two, but like bending a green stick until one side breaks. Dr. Jackson testified, from a recent examination, that the leg had been fractured, the tendons of the heel strained, and the motion of the ankle retarded. She may walk well on smooth ground, but will be troubled on rough ground. He was of opinion that her injury would probably be permanent.

All the nurses and neighbors, having the best opportunities for forming an opinion, testified that she was a great sufferer ; was confined to her bed for a long period, and lost a winter from her school, While it is to be conceded to defendant that its evidence tended to show that the injuries were perhaps less serious and permanent than shown by the plaintiff's evidence, yet it were trifling with obvious facts, almost incontrovertible, to say that her injury was not painful and serious. A dollar compensation for such an injury strikes the mind as monstrous. Such verdicts by juries are justly to be regarded as public misfortunes, as they tend, in large measure, to strike down popular respect for the jury system. No broader highway can be opened to expose it to the full view of public contempt than such awards as they made in this case. The remedy for the increasing evil rests mainly with the trial courts in awarding a *venire de novo*, after publicly rebuking the jury for such an abortion of justice. We are fully aware of the rulings of our courts on the question of damages in mere actions of tort. The writer had occasion, in *Gregory v. Chambers*, 78 Mo. 294, to review the authorities and determine the law on such questions. It is there held that, in actions founded upon torts, and sounding merely in damages, the court will not interfere solely on account of the smallness of the damages allowed by the jury ; with the exception, however, that it does not apply to actions *ex contractu ;* "nor where the verdict is the result of fraud or misconduct." This question has recently been before the Supreme Court in *Pritchard v. Hewitt*, 91 Mo. 547, in which a verdict for one dollar was affirmed in the action of assault and battery. The court again recognizes the general rule that in such actions the verdict will not be disturbed merely on account of the smallness of the damages, but declares that the rule is subject to the exception laid down in 1 Graham & Waterman on New Trials, that, where the damages, under the circumstances, are such as "to shock the understanding," and induce the conviction

that the verdict was the result of either passion, prejudice, or partiality, the court should interfere. It was in recognition of this paramount principle that, in *Whitsett v. Ransom*, 79 Mo. 258, where, on the evidence alone, in an action of assault and battery, the Supreme Court ordered a new trial. The evidence showed an aggravated assault, yet the jury, in disregard of the evidence and the law, brought in a verdict for defendant. The court say: "Such a trial is a travesty on justice, and a mockery of the courts." The writer of the opinion observed: "I yield to no one in my reverence for the right of trial *per pais*, as Blackstone styles it, and due respect for the proper domain of jurors. But the courts owe a duty of paramount concern to the cause of good government and orderly society. Under a sense of that obligation," the court reversed and remanded the cause.

So, in the case of *Welch v. McAllister*, 13 Mo. App. 89, the plaintiff, a woman, was injured by falling through a hatchway in defendant's establishment. Her head was cut, and she lay in bed a week, and then went to an infirmary for two or three weeks. The jury found the issues for her, but assessed the damages at only one cent. Thompson, J., in delivering the opinion, said: "The only question is, whether this verdict is so small as to show that the jury in rendering it must have acted from passion or prejudice. We think it is. The rule is, that, where the verdict is either so great or so small as to indicate that, in rendering it the jury either disregarded the testimony or acted from passion or prejudice, it is the duty of the court to set it aside (citing 2 Sedgwick on Damages [7 Ed.] 660, note *a*). * * * No conscientious person can say that one cent is an adequate compensation for the hurt which this poor old woman is shown to have suffered."

If the sum of one dollar, awarded this little girl for the suffering she underwent, does not "shock the understanding," and enforce the conviction that there must have been some undue influence operating upon the mind of the jury, it would be difficult to conceive of

a case coming within the recognized exception. It is worthy of observation that, in the cases of *Gregory v. Chambers* and *Pritchard v. Hewitt, supra*, there were attendant circumstances to justify the action of the jury. But in the case at bar we fail to discover anything which could reduce the recovery to mere nominal damages. The only possible defences to the action were: (1) that there was no negligence on the part of the defendant, and (2) that plaintiff was guilty of contributory negligence. By their verdict the jury found that the injury resulted from defendant's negligence, and that, therefore, plaintiff was not guilty of contributory negligence. Indeed, there was scarcely a *scintilla* of evidence of any contributory negligence on the part of the plaintiff; and, unless the jury had regarded the imputed statements or admissions made by plaintiff's father as evidence, which they had no right to do, it is difficult to discover upon what such claim could reasonably rest. As said by Thompson, J., in *Welch v. McAllister, supra:* "There is no doctrine of comparative negligence in this state. The law has no scales with which to determine the comparative fault of the parties. The plaintiffs were entitled to recover reasonable compensatory damages for the physical pain and suffering which Mrs. Welch underwent, or they were entitled to recover nothing at all."

V.   As the case is to be remanded, it may be as well to say something touching the instructions given in this case.   We discover no substantial objections to the amendments made by the court to the instructions asked by the plaintiff.   Instruction number one, given for defendant, required, before the plaintiff could recover, that they should find, "that the thoroughfare was out of *repair* or *obstructed* by the negligence of the city, and second, that the plaintiff, at the time of the injury, was using ordinary care." There was no issue presented by the pleadings as to the thoroughfare being out of repair. The charge was, that the crossing was improperly or negligently constructed. It was not out

of repair, but was admittedly in the very condition in which defendant left it. Nor was it proper to submit any question about the thoroughfare being "obstructed." This was calculated to mislead the jury. It did not devolve on the plaintiff to prove that she was exercising ordinary care. The law presumes that she was. It was a matter of defence for the defendant, and the burden rested on it as to such issue. *Buesching v. Gas Co.*, 73 Mo. 219. Instruction number two, given for defendant, should not be repeated. It recites that if a person should, for his own amusement, or convenience, and the like, leave the highway, which is in good condition, and then meet with some misfortune, etc. The instruction is a mere abstraction, and not predicated of the facts. So of the fourth instruction, respecting the duty of a city to keep only such parts of its streets in repair as may be necessary, etc. It has no application to this case. Instruction number six should not be repeated. It was predicated of the fact that plaintiff departed from the sidewalk, and was playing on the timbers, etc. This is not supported by any evidence. Of course, if other evidence should be developed on a second trial to support such hypothesis it would be proper to give such an instruction. The eighth instruction is faulty in that it requires the plaintiff to prove that defendant "was carelessly *obstructing* the street." The ninth instruction is bad for the reason just stated, and for the further reason that it puts the burden on plaintiff of proving her own care and caution. The tenth instruction told the jury that the aprons of the walk were not made to walk on, and that if the top surface was sufficient for a safe walk, and plaintiff went on to the slanting apron to walk, carelessly, etc., by reason of which she fell, she cannot recover. The evidence was that this walk was about twenty-six inches wide on the top, with aprons slanting off to the sides at considerable angles. It is not proper for the court to declare, as matter of law, that these aprons were not made to walk on. They are a part of the footway for crossing the street, and as such are cal-

culated to invite passengers to step thereon. It would be a question for the jury, under all the facts and circumstances in evidence, to determine whether there was ample room for the safe and convenient passage of a person, exercising ordinary care, without stepping on the aprons, and if, owing to the slippery condition of the narrow walk, such passenger would be more likely to receive a fall by his foot touching this slanting apron, it would be for the jury to say whether it was constructed in a reasonably safe manner, for passage by day and night, in good and bad weather. So of the eleventh instruction. It told the jury, that if plaintiff slipped and fell "by reason of said crossing being temporarily slippery from mud and water, and not from any defective condition of the crossing," plaintiff cannot recover, etc. It was the duty of the defendant to so construct its crossing as to make it reasonably safe for use under all the circumstances of such use which would ordinarily arise. Knowing, as it did, the liability of the sidewalk to become slippery in the case of rain and mud, in such a climate as that, it was its duty in constructing it to have regard to such fact, and to reasonably anticipate that just such a contingency would likely arise. It was no such extraordinary and unusual occurrence as not to have been reasonably expected by the city. *Brink v. Railroad*, 17 Mo. App. 178.

The other judges concurring, the judgment is reversed and the cause remanded for further trial.