GEORGE BOCK, by his next friend, MICHAEL BOCK, Appellant, v. HERMAN RINDER-KNECHT, Respondent.

St. Louis Court of Appeals. Opinion Filed December 3, 1918.

1. **NEGLIGENCE:** Evidence: Question for the Jury. Where defendant's wagon was being driven through a gateway and the hub of the rear wheel struck the gate knocking it over on a boy eight years old, who was standing on the sidewalk, injuring him, *held,* the question as to defendant's negligence was one for the jury.

2. **DAMAGES:** Inadequate Damages: Personal Injuries. A nominal verdict for the plaintiff in the sum of $1 returned by the jury as full compensation to one who has suffered an oblique fracture of the upper thigh bone, as well as a fracture of the lower pelvic bone and a fracture of the joint where the head of the thigh bone had been driven into the hip bone, and a fracture of the hip bone, which injuries required an operation, the opening up of the thigh to the bone, and the wiring together of the fragments of the fractured bones, which injuries caused great suffering to the plaintiff for four or five weeks and necessitated his remaining in the hospital for a period of eight weeks, and resulted in a shortening of his left limb one-fourth of an inch, *held,* so grossly inadequate, under the evidence and the instructions, that it "shocks the understanding," and indicates prejudice, passion, or bias on the part of the jury against plaintiff.

3. ———: Reduction of Damages: Payments by Defendant. The fact that the defendant, in an action for personal injuries, has paid plaintiff's hospital and doctor bills, cannot be considered by the jury in arriving at what sum the plaintiff is entitled to as full compensation for the injuries he has sustained by a negligent act of the defendant.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. William T. Jones*, Judge.

REVERSED AND REMANDED (*with directions.*)

*William Hilkerbaumer* for appellant.

(1) Having found a verdict for plaintiff, it remained the duty of the jury, under the instructions of the court, to ascertain the extent of plaintiff's injuries and to award him adequate compensatory damages. No conscientious person can say that one dollar is adequate compensation for the injuries received and the pain and suffering endured by plaintiff, as shown by the uncontroverted evidence. The remedy for such a miscarriage of justice rests mainly with the trial court in awarding a new trial, and failure to do so constitutes reversible error. Appellate courts do not hesitate to set aside such verdicts where the trial court has refused to do so, on the ground that such refusal is not the exercise of a sound discretion. Fisher v. City of St. Louis, 189 Mo. 567; Welch v. McAllister, 13 Mo. App. 89; Fairgrieve v. Moberly, 29 Mo. App. 141; Craton v. Huntzinger, 187 S. W. 48; Noble v. Kansas City, 222 Mo. 121, 120 S. W. 779; Chouquette v. Railroad Co., 152 Mo. 257; Dorsett v. Chambers, 187 Mo. App. 276, 173 S. W. 725; Richardson v. Mo. Fire Brick Co., 122 Mo. App. 529.

*Muench, Walther & Muench* for respondent.

(1) (a) "Where a jury has returned a verdict for nominal damages, in a case where the plaintiff is not entitled to any damages, the verdict will not be set aside in the appellate court at the instance of

200 M. A.—32

plaintiff.'' Haven v. Missouri Railroad Co., 155 Mo. 216, 223; Pritchard v. Hewitt, 91 Mo. 550; Overholt v. Vieths, 93 Mo. 426; Leahy v. Davis, 121 Mo. 236; Dowd v. Air Brake Co., 132 Mo. 579; Randle v. Mo. Pac. R. R. Co., 65 Mo. 334. (b) Nor will such verdict be set aside as ''insufficient, unless it be such as bears evident marks of prejudice, passion or corruption.'' Leahy v. Davis, supra; Pritchard v. Hewitt, supra. (2) (a) There was but one specification of negligence (out of five) submitted to the jury, and this one was completely refuted by the testimony. The charge was that the horse was driven through while the gate was still being opened, and before opened entirely. Not only is there complete oral proof to the contrary, but the physical fact that the front hub passed the moving gate, and only the rear hub struck it, conclusively shows that the gate must have been completely opened, and at a standstill when the contact occurred. Such physical facts constitute a showing too conclusive to be affected or varied by mere oral evidence. Roberts v. Railway, 56 Mo. App. 64; Weltmer v. Bishop, 171 Mo. 116; Sexton v. Railway, 245 Mo. 275. (b) Having relied upon a specific charge of negligence, plaintiff was bound to prove the charge as laid. The proof did not sustain the charge, hence plaintiff should not have recovered. Sexton v. Railway, supra.

BECKER, J.—This is an action by a minor, by his next friend, for personal injuries sustained and predicated on defendant's alleged negligence. The petition alleges the damages at $7500. The case was tried to a jury and a verdict resulted in favor of plaintiff for the sum of $1. Plaintiff thereupon filed a motion for new trial, challenging the verdict on the ground, among others, that the verdict was grossly inadequate and against the evidence and the weight of the evidence; contrary to the instruction of the court and so grossly inadequate and contrary to the evidence and the weight of the evidence as to indicate bias, passion or prejudice on the part of the jury,

and because plaintiff was entitled to substantial damages. Upon this motion being overruled plaintiff in due course brings this appeal, assigning said ruling as error.

The record before us discloses that the sufficiency of plaintiff's evidence to make a case for the jury was not challenged, nor was any peremptory instruction requested on the part of the defendant at the close of the entire case.

The defendant owned and conducted a grocery store, located on the southwest corner of Carrie and Prescott avenues, in the city of St. Louis. These premises faced on Carrie avenue and the lot ran south along the line of Prescott avenue to an alley. The store building was located on the front or north end of the lot and extended back along Prescott avenue forty-eight feet. There was also a twenty foot shed at the rear of the lot which abutted the sidewalk and the alley. That part of the lot between the store building and the shed was fenced in as a wagon yard. A fence was built along the sidewalk on the west side of Prescott avenue from the end of the store building to the shed and there was a wagon gate ten feet wide in this fence. The wagon gate was maintained and operated by the defendant and used by himself and his employees in driving in and out of the wagon yard. On April 2, 1914, the plaintiff then eight years of age, was injured by the falling of the wagon gate upon him as he was walking along the sidewalk on Prescott avenue.

While the petition contains five assignments of alleged negligence, the case was finally submitted on but one of these, namely: that "defendant, his agents, servants and employees, were further negligent and careless in driving or attempting to drive through said gateway with a wagon drawn by a horse or horses, before said gate was fully open or when same was not sufficiently open to allow said wagon to pass, and by negligently and carelessly causing or permitting a wheel or other part of said wagon to run against said

gate or to catch or pull on the same and thereby causing said hangers or one or more of them to leave said track, causing said gate to fall upon said sidewalk and upon plaintiff while he was lawfully on said sidewalk, injuring him as herein stated.''

According to plaintiff's witnesses the plaintiff, his older brother and a friend, Bennie Kleinberg, passed the defendant's store on the day that plaintiff met with his injuries, just at a time when a son of the defendant was driving the defendant's grocery wagon south on Prescott avenue toward the gateway leading into the defendant's yard. Plaintiff's brother hopped on to the rear of the delivery wagon while the plaintiff and Kleinberg walked south along the sidewalk on the west side of Prescott avenue. When the wagon reached a point in the street opposite the gate the defendant's son who was driving the wagon, requested the Kleinberg boy to open the gate; the horse and wagon at that time were facing the gate in a westerly direction. Kleinberg got to the front end of the gate and started to open it, pushing it back toward the alley, that is pushing the gate toward the south. Plaintiff at that time was on the sidewalk to the north of the gate but while the Kleinberg boy was opening the gate plaintiff walked around the rear of the wagon and back on to the sidewalk to the south of it. As the wagon was driven into the yard through the gate, the hub of the south rear wheel struck the gate knocking it over. The gate fell upon plaintiff who was on the sidewalk, and injured him.

Bennie Kleinberg as a witness for plaintiff testified: ''I pushed the gate; didn't have it open far enough and the horse went in the yard and the hub of the back wheel hit the gate . . . nothing but the striking of the axle made the gate fall; no obstruction, pebbles or rocks on the ground. It moved just as it always did. When the horse went in the driver was still on the seat and had hold of the lines; saw the hub of the wheel hit the gate when I was by the alley.''

Willie Bock, plaintiff's brother, testified for the plaintiff that the boy driving the wagon asked Bennie Kleinberg to open the gate, which Kleinberg did, pushing the gate toward the alley, "the horse went in and the back wheel, the hub of the wagon, drew the gate off. The back wheel on the south side of the wagon.    I saw it.   Bennie Kleinberg did not shove the gate all the way open.   I saw him and I jumped off the wagon before he opened the gate.   The horse was then about four feet from the gate, standing still.    It started too quick and the hub got caught.   It was open about six feet.    The gate was still moving when the horse started to go in."

Dr. John A. Cawood, a witness for plaintiff, testified that he had been a physician for twenty years and a surgeon for ten years practicing in the city of St. Louis; that when he arrived at the home of the plaintiff on the afternoon of the day upon which plaintiff met with his injuries he found the boy was suffering very much and it was impossible to make a careful examination.   That night he took the boy to a hospital and took X-Ray photographs of his injuries and then put him under chloroform and tried to reduce the fracture of the leg and found it was impossible to do so; that it was impossible to retain the leg in proper position by means of an ordinary plaster cast or splint. He found an oblique fracture of the femur; also a fracture of the lower pelvic bone and a fracture of the joint where the head of the thigh bone had been driven into the hip bone and a fracture of the hip bone.   The doctor further testified that the fracture through the shaft of the bone was in an oblique direction and about three and one-half to four inches long and that the parts of the bone were drawn past each other and that as the bone was broken the muscles drew the lower portion of the limb up, causing the lower parts to pass each other, and as the bone was broken in an oblique manner it was impossible to retain the bones in place with the ordinary dressing.   He thereupon made an incision in the boy's thigh down to the bone and wired

the fragments of the bone together. That the boy was in the hospital from April 2, 1914, until May 28, 1914, continuously; that the injury was of a character which would bring about very much suffering and pain and that the plaintiff suffered considerably for the first four or five weeks; that as a result of the injury there was a partial shortening of the injured limb, perhaps a quarter of an inch; that the shortness of the limb, however, would not be apparent but would adjust itself by a shifting of the pelvis, which would tilt in order to make up the difference; that the leg would undoubtedly be less strong than the other for some time, say for a year or two.

On cross-examination Dr. Cawood testified as to the shortening of the limb, that it would not show in the boy when he was running about and that the plaintiff would have no sense of having a shortened limb, and that where there was a shortening in youth it would be compensated for by nature, and that when the boy would reach manhood no one would be able to tell that he had ever had the fracture.

On the part of the defendant, Herman Rinderknecht, Jr., testified as a witness, that he was a son of the defendant and was driving the horse and wagon for his father on the day on which plaintiff met his injuries; that he "approached the gate a little diagonally; that the front wheels were a little farther south than the rear ones; that the wagon is five feet, eight inches from outside hub to hub and that both axles are the same gauge; that Kleinberg opened the gate, pretty fast, and all the way. I went in the yard and the wheel got on gravel, slid on to the gate and the rear wheel hit the gate and it fell, the north upright of the gate falling on the plaintiff who was on the side walk about five and one-half feet from the shed and some twenty to twenty-two feet from the alley. This was a slow horse. The gate stopped before I started in and the horse stood eight feet from it."

Mrs. Fred Rinderknecht, a witness for defendant, testified that she was a daughter-in-law of the defendant

and was in the defendant's store just before the accident and as she passed out the rear door of the grocery she saw the horse and wagon come into the yard when the gate fell, "noticed the horse make a jump as if anxious to get out of the harness and the gate was nearly open at the time. The horse made kind of a swift move as it was coming through the gateway; did not see the horse until it got into the yard."

Defendant adduced one witness, a carpenter, who testified he had put the gate in good shape about three months before the date of the accident; and there were several witnesses who testified that the plaintiff, after his return from the hospital, played around with other children in the neighborhood seemingly in as good a condition as he ever was.

Appellant's sole assignment of error is that the verdict of $1, in favor of plaintiff and against the defendant, in view of the testimony adduced at the trial, is so grossly inadequate and contrary to the evidence and the weight of the evidence as to indicate bias, prejudice or passion on the part of the jury. We have set forth the testimony at some length in that it was earnestly urged by learned counsel for the respondent here that the plaintiff had not in point of fact made out a case entitling him to go to the jury, and that for that reason the verdict should not be set aside. The point is not well taken as even a casual reading of the testimony will show. That at the time the case was tried below counsel for the defendant was satisfied on this point is evidenced by the fact that no motion was made at the close of the plaintiff's case to take the case from the jury, nor was any peremptory instruction asked at the close of the entire case.

Having concluded that the case is one for the jury we next examine the instruction on the measure of damages. We find that the court, at the request of the plaintiff, instructed the jury as follows:

"If the jury finds for the plaintiff they will assess his damages at such a sum as they believe from the evidence will compensate him for injuries sustained

by him, directly caused by the negligence of defendant as set forth in these instructions and as shown by the evidence, if any; and, in estimating the amount thereof, they will take into consideration the physical injuries received, if any; the character and extent thereof, and whether they are permanent in their nature; and the bodily pain and mental anguish endured and suffered by plaintiff, if any; altogether not to exceed the sum of seventy-five hundred dollars.''

And at the request of the defendant the court instructed the jury that the plaintiff had not been injured in his earning capacity and that if the jury returned a finding in favor of plaintiff they should not allow him any damages for any expected loss of earnings either during his minority or thereafter. There is no complaint that either instruction was not proper; 'we set them forth so that we may see to what extent the jury, in arriving at their verdict of $1 in favor of plaintiff, may have been guided by them.

When we consider the plaintiff's injuries, and remembering that the defendant did not introduce any evidence to combat the testimony of plaintiff's physician as to their nature and extent, nor to minimize their extent except as to their permanency, we have before us a nominal verdict for the plaintiff in the sum of $1, returned by the jury as full compensation to one who has suffered an oblique fracture of the upper thigh bone, as well as a fracture of the lower pelvic bone and a fracture of the joint where the head of the thigh bone had been driven into the hip bone, and a fracture of the hip bone, which injuries required an operation, the opening up of the thigh to the bone and the wiring together of the fragments of the fractured bones, which injuries caused great suffering to the plaintiff for four or five weeks and necessitated his remaining in the hospital for a period of eight weeks, and resulted in a shortening of his left limb one-fourth of an inch, which while not perceptible after the boy left the hospital, yet was a permanent condition though not noticeable by reason of the fact

that the shortening was compensated by the tilting of the pelvis.

The plaintiff is entitled to full compensation for his physical injuries, considering their character and extent and the permanency of their nature and for his bodily pain and mental anguish suffered by him, and no fair minded person can but conclude that the verdict is grossly inadequate and must have been arrived at in disregard of the evidence. The verdict cannot be sustained in the light of reason or justice. We have gone over the record in an endeavor to understand what could have influenced the jury, having found for plaintiff, to limit his recovery to the sum of $1. We find there was testimony permitted to be introduced to the effect that the defendant had paid the hospital and doctor bills for the plaintiff. Whether the jury took that testimony into consideration in arriving at their verdict we do not know. Such testimony however cannot be considered in arriving at what sum the minor, here suing by his next friend, is entitled to as full compensation for the injuries he has sustained by a negligent act of the defendant. The size of the verdict is so grossly inadequate under the evidence and the instructions that it "shocks the understanding" and we hold indicates prejudice, passion or bias on the part of the jury against plaintiff. [Fischer v. City of St. Louis, 189 Mo. 567, 88 S. W. 82; Craton v. Huntzinger, (Mo.) 187 S. W. 48, and cases cited.]

To the end that justice may be subserved we hold that the trial court erred in overruling plaintiff's motion for a new trial; therefore the judgment is reversed and the cause remanded with directions to the lower court to set aside the order overruling appellant's motion for a new trial; to sustain that motion and grant appellant a new trial; and for further proceedings in the cause.

*Reynolds, P. J.,* and *Allen, J.,* concur.