Edwin A. DAVIDSON, Appellant,

v.

W. H. SCHNEIDER, Respondent.

No. 48418.

Supreme Court of Missouri,

Division No. 2.

Sept. 11, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Oct. 9, 1961.

Keyes, Bushman & Hearne, Sam Bushman, John L. Hearne, Jefferson City, and Tom R. R. Ely, St. Louis, for appellant.

Luke, Cunliff & Wilson, Paul H. Chavaux, St. Louis, for respondent.

BARRETT, Commissioner.

■ In this action against W. H. Schneider, Edwin A. Davidson sought to recover $35,000 damages for personal injuries and $250 for injury to his automobile. The action arose out of a collision of Davidson's and Schneider's automobiles on U. S. Highway 66, near Eureka, on September 23, 1956. Upon the trial of the cause in April 1960, a jury returned a verdict in favor of the plaintiff, Davidson, in the sum of $531.50 and he has appealed. His principal claim is that by reason of the inadequacy of the verdict he is entitled to a new trial. In this situation the amount in dispute is the difference between the total sum claimed, $35,250, and the sum recovered upon the trial, $531.50, and jurisdiction of the appeal is appropriately in this court. Const.Mo. Art. 5, Sec. 3, V.A.M.S.; Laws of Mo.1959, S.B.No. 7; Conner v. Neiswender, 360 Mo. 1074, 1076, 232 S.W.2d 469, 470; Coghlan v. Trumbo, Mo.App., 171 S. W.2d 794.

Specifically, it is the appellant's contention that the verdict of $531.50 "is so shockingly inadequate that it can be explained only as a result of bias, partiality, prejudice, or passion, and there is not substantial evidence to sustain the amount of the jury's verdict; and the trial court abused its discretion in overruling plaintiff's motions for new trial" and, therefore, it is said that this court should set the award aside and grant him a new trial. The quotation from the appellant's brief paraphrases in general the rules concerning inadequate verdicts and this court's function and duty in reviewing awards claimed to be inadequate. Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 11–12, 212 S.W.2d 915, 918; Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S.W.2d 618; Conner v. Neiswender, supra; annotation 16 A.L.R.2d 393, 401; 47 L.R.A. 33; 39 Am.Jur., Secs. 145, 147, pp. 151, 153. The parties are not in disagreement as to the applicable substantive rules and it is not necessary to repeat them here. As has been pointed out in a thoughtful opinion, how-ever, the court has not always been consistent in its statement or application of the rules and in addition to these usually stated principles "an appellate court may order a new trial on the weight of the evidence when the verdict (by reason of inadequacy) clearly betokens passion and prejudice." Hemminghaus v. Ferguson, 358 Mo. 476, 485–487, 215 S.W.2d 481, 485–486; Sup.Ct. Rule 78.01, V.A.M.R.; Coghlan v. Trumbo, Mo., 179 S.W.2d 705.

In addition to relying on these general rules, the appellant contends that certain errors in the trial of the case "reflect some light to show the bias, partiality and prejudice of the jury in making its award of damages." It is said that the effect of the trial court's erroneous rulings was "to deprecate and disparage the value of plaintiff's claim for damages for personal injuries and to create an atmosphere wherein bias and prejudice against the plaintiff did develop and take ascendency over the evidence and the proper instructions of the court in the minds of the jurors, or, at least, influence them in awarding plaintiff his damages." The plaintiff claims that these errors point up the fact that the meager award undoubtedly resulted from passion and prejudice. It is not necessary to examine each of these four supporting points in detail, it is sufficient to indicate that they were not manifestly inflammatory, or, conceding that technically the court erroneously ruled as to some of them, that in themselves they are not sufficiently prejudicial to command the granting of a new trial.

One of the matters pointed to is the refusal of the court to permit plaintiff's counsel on voir dire to inquire of the jury panel whether any of them were employees of or stockholders in the Sun Insurance Company of New York. The court's refusal to permit this particular inquiry, incidentally, was due to the manner and time in which counsel proposed to ask the question—before the court and jury after he had entered upon his examination without preliminary inquiry or request from the court. The plaintiff merely asserts the right to pro-

pound this question, there is no attempt to demonstrate just how the court's refusal to permit this particular inquiry engendered passion or prejudice on the part of the jury against the plaintiff, and it is not immediately apparent how it could or did have that effect. It is objected that the court refused to permit the plaintiff, Davidson, to testify that Dr. Vilray P. Blair had discussed with him the possibility of surgery. While the plaintiff was not permitted to testify to this particular discussion, Dr. Blair testified to it repeatedly. Dr. Blair's conclusion is sufficient to illustrate the vital point: "His present status wouldn't require it. I testified before that if he would injure his back again and it is weaker, he might require it or not. And it is certainly a hard thing to prognosticate on. I wouldn't want to tell the man 100 per cent yes or no. But he has responded to the treatment I outlined and, *at the present time, there is no indication of any surgery on him.*" Dr. Blair was not permitted to testify "to the degree or percentage of permanent disability or injury," and the plaintiff was not permitted to testify that as a result of his injuries "he had difficulty sleeping" or that his injury and the discussion of surgery have caused him "worry, concern and anxiety."

While Dr. Blair was not permitted to testify to the percentage of the plaintiff's disability, he did testify that "he still has disability, and he has had it to the point where I believe it is permanent." The effect of the injury is, the doctor said, "I don't believe he will do it (his work) as efficiently as somebody with a normal back." The plaintiff repeatedly described his symtoms, particularly the recurrent "soreness" in his back, and he said, "I have as much pain as I ever did." The doctor repeatedly described his symptoms. The court sustained objections to one or two of these matters because counsel's questions were leading, not because the subject matter was inadmissible or because the plaintiff could not testify to it, and the questions were not reframed. Even so, from the detailed evi-

dence, three and one half years after the accident, the jury, if it believed all of the plaintiff's evidence, could fairly well assess the degree or percentage of his disability and whether it interfered with his sleep. Upon the essential issue involved here, the point to all these matters is that they were not "calculated to arouse passion and prejudice against plaintiff than to throw light on the issues involved." Upon this record these matters were not comparable to the invited "sinister influences" which entered "into the case and are reflected in the extremely inadequate verdict returned," as was the fact in the leading case of Grodsky v. Consolidated Bag Co., 324 Mo. loc. cit. 1083, 26 S.W.2d loc. cit. 625. As a matter of fact this case was well and fairly tried without fanfare or bombast, and, unless demonstrated by the meagerness of the verdict alone, there was not a single incident that would arouse the jury's passion and prejudice against the plaintiff. The only matter inflammatory in this sense was Davidson's testimony that Schneider was thick-tongued, unsteady on his feet and reeked of alcohol. And Schneider made the exceptional admission that in the course of the day he had consumed 3 or 4 or 5 bottles of beer.

The defendant's liability for the plaintiff's losses has been conclusively established by the jury's verdict and it is not necessary to note the evidence concerning that issue (Grodsky v. Consolidated Bag Co., supra) except in so far as the collision itself may have some bearing on the nature and extent of the plaintiff's injuries. Highway 66 east of Eureka was under construction and the collision of the parties' automobiles occurred on a two-lane, concrete "crossover." Davidson, returning to Jefferson City from St. Louis, traveling west at a speed of 55 to 60 miles an hour, reduced his speed to about 30 miles an hour as he approached and proceeded into the right traffic lane of the crossover. Schneider, traveling east towards St. Louis at a speed of approximately 65 miles an hour, did not see the black-and-white painted barrier marking

the crossover until he was upon it. His automobile first went off onto the right shoulder, then to the left and at that point "began to swerve" and "more or less bounced off me than just a slicing blow." Schneider, in describing the collision, said, "I went into that fan-shape arrangement on the next turn. In other words, I fishtailed my car twice, and then there was a glancing blow to Mr. Davidson's car, and I continued on from there"—100 to 150 feet. Davidson's automobile stopped within twenty feet. In any event, the left rear fender of Schneider's automobile struck the side of the left front fender of Davidson's automobile just ahead of the left front door. Both of the automobiles were "driveable" after the impact, the parties exchanged names and drove on, Davidson driving 100 miles to his destination in Jefferson City. At the scene of the collision Davidson did not appear to have been injured, and said to Schneider, "I told him I didn't think so." In his petition Davidson asked for $250 damages to his automobile, the vehicle was repaired but there was no evidence as to the cost. He proved the damages to his automobile by testifying that its value was $2,800 before the collision and $2,500 afterwards, a loss of $300.

Davidson says that as a result of the collision his lower back struck the arm rest on the car door and his shoulder struck "some part," but he did not immediately experience any pain and there was no external evidence of any injury. When he got up the following morning he noticed "a soreness and pain in my lower back." He worked that day, however, and waited, he says, two or three days before consulting a doctor. The chronology of his consultation of doctors is this: The collision occurred about 8:45 p. m. on September 23, 1956. Dr. Tietjen's records show that he first saw Mr. Davidson at his office in Jefferson City on October 3, 1956, having been referred by Dr. Matthews—a fact that Davidson did not remember. At that time, Dr. Tietjen says, Davidson complained of soreness in his back which was said to

have developed over a six-day period. Thereafter Mr. Davidson was in Dr. Tietjen's office seven times, the last time on November 20, 1956. On four of these occasions the doctor examined and treated him and on the other occasions the office technician administered the treatments. Davidson moved from Jefferson City to Neosho, where he lived about four months, and while there was seen by Dr. Grantham in Joplin one time. Then he moved to Kansas City where he has since resided but has not consulted a doctor in that city. Instead he consulted Dr. Vilray P. Blair in St. Louis as he sometimes drove from Kansas City to St. Louis. Dr. Blair's records show that he first saw Mr. Davidson in his office on March 26, 1957, next on April 26, then on August 25, 1957, and finally on April 6, 1960, five days before the trial. Other than on these noted occasions he has not consulted a doctor in the three and one half years and he has not been hospitalized.

Dr. Tietjen testified that his initial examination revealed "some muscle tenderness, which extended on both sides of the spine in the back, extending throughout the lumbar and lower thoracic area." He thought physiotherapy most helpful and prescribed ultrasonic treatments "which is ideal for eliminating subjective aches and pains that exist, particularly in soft tissues of the body." X-ray examinations were negative and Dr. Tietjen's diagnosis was that Davidson "had sustained an acute sprain to his lumbar spine and associated soft tissues." He found no objective evidence of a herniated disc and his diagnosis of acute sprain and any possibility of a herniated disc was qualified as "presumptive," by which he meant, "It is a guess." It does not appear what Dr. Grantham found upon his one office call. When he saw Dr. Blair his complaint was of lower back pain, aggravated by coughing and relieved by rest. Dr. Blair found both objective and subjective symptoms, a limitation of motion in the lumbar spine and tenderness over the lumbosacral joint and there was one half inch atrophy at the calf

of his left leg. His X-ray examination was negative but it was Dr. Blair's diagnosis that Davidson was suffering from "a mild herniation of a lower lumbar disc, which resulted in low back pain." Dr. Blair advised rest and prescribed Bufferin, a medical back support and sleep on a mattress without springs, "That's a good treatment for sore backs of all kinds." Davidson has worn the back brace intermittently, especially after long drives and after a day's field work in his profession as an engineer. As indicated, Dr. Blair is of the opinion "As the symptoms have persisted, it is felt that this man has permanent disability referable to the lumbar spine." He does not specify a particular disc, there was no confirming diagnosis by myelography, but it is the opinion of Dr. Blair that Davidson's specific injury is a mild herniated disc.

At the request of the defendant Davidson was examined on three occasions, September 6, 1957, December 10, 1959, and April 6, 1960, by Dr. McCarroll, as with Dr. Blair a well-known St. Louis orthopedist. In brief, this was Dr. McCarroll's opinion: "And, I can simply state that there were no objective findings * * * which would permit me to state definitely the nature of this problem as an explanation of his symptoms." He found a "mild discrepancy" in the calf of the left leg which he "felt to be within the possibility of error (in measurement); but, there was that difference found." On the second examination he concluded, "Again, there were no objective findings which would permit an adequate explanation or classification of this problem. In any patient with symptoms referable to the lower part of the back, it is possible he could have some indefinite low back strain, but I would be unable to classify it any more definitely than that, because he had no objective findings which would permit me to do so." It was Dr. McCarroll's opinion that Mr. Davidson did not have a mild herniated disc, at most he conceded only the possibility of a low back sprain. In view of Mr. Davidson's complaints he would advise him to wear the back brace "when he felt he needed it" and he would prescribe the use of a board under an innerspring mattress.

Thus it is obvious that the evidence as to the nature and extent of the plaintiff's injuries is not undisputed, even his own medical evidence is not overwhelmingly persuasive of a serious permanent injury, the jury could and from the size of its award must have found that any injury he sustained was trivial or not serious in "its end result." Roush v. Alkire Truck Lines, Mo., 245 S.W.2d 8, 11; Conner v. Neiswender, 360 Mo. loc. cit. 1079, 232 S.W.2d loc. cit. 472. There was no loss of earnings and, therefore, the case is not comparable to Ulrich v. Kiefer, Mo.App., 90 S.W.2d 140, in which a $240 award (the expense of physicians) allowed nothing for indisputably lost earnings or for obvious physical injuries, including a fractured clavicle. When injured Davidson was employed by the Missouri State Highway Department, he lost no time from that employment and was earning $465 a month. Since then he has been employed by an engineering firm in which he is a partner or organizing stockholder and has been paid $500 a month although he says that his back soreness has caused him to lose some time in that work. Necessarily, the amount of damages to be awarded is primarily for the jury, subject however to the discretion of the trial court (McCarty v. St. Louis Transit Co., 192 Mo. 396, 91 S.W. 132), and the trial court having considered the weight and credibility of the evidence this court must view the issue of damages favorably to the verdict unless there is a manifest abuse of discretion. Conner v. Neiswender, supra. As to the plaintiff's principal injury the evidence is in conflict, and since the defendant's evidence shows that the plaintiff's symptoms were all subjective and his injuries, if any, very slight, at most possibly a mild back sprain, it may not be said that the size of the verdict alone bespeaks bias or passion and prejudice on the part of the jury. Coghlan v. Trumbo, supra.

■ The verdict of $531.50 is not a "nominal" award, "merely as a recognition of some breach of a duty owed by defendant to plaintiff," it was " 'substantial' * * an effort at measured compensation." McCormick, Damages, Sec. 20, p. 85. In this jurisdiction nominal awards, one dollar, one cent, for serious injuries or death have been set aside as of course, the trifling verdicts clearly indicating misconduct or a complete misapprehension of duty on the part of the jury. Noble v. Kansas City, 222 Mo. 121, 120 S.W. 779; Bock v. Rinderknecht, 200 Mo.App. 496, 207 S.W. 245; Welch v. McAllister, 13 Mo.App. 89; Fairgrieve v. City of Moberly, 29 Mo.App. 141. According to the plaintiff the damage to his automobile was $300, although his petition asked for $250. He paid Dr. Tietjen $97, Dr. Grantham $19 and Dr. Blair $115, there was no evidence as to any other item of expense or loss. These four items total $531 and from the award of $531.50 it is argued that the award was a matter of fact nominal and demonstrates that the jury wilfully disregarded the court's instructions, particularly the instruction on the measure of damages. Purkett v. Steele Undertaking Co., Mo.App., 63 S.W.2d 509, 513. And it has become the generally accepted view that awards of medical expense only (and it may be added of property loss only), the jury failing to award any sum for pain and suffering, are invalid and set aside almost as a matter of course. Davis v. City of Mountain View, Mo.App., 247 S.W.2d 539; English v. Thrower, Mo.App., 146 S.W.2d 667; annotation 20 A.L.R.2d 276; 4 Sedgwick, Damages, Sec. 1369, p. 2753. This of course is but a further application of the general rules regarding inadequate verdicts, the jury having found the issue of liability in favor of the plaintiff "may not give any verdict it pleases" (McCarty v. St. Louis Transit Co., 192 Mo. loc. cit. 401, 91 S.W. loc. cit. 133, it is also bound to award damages commensurate with the nature and extent of the injuries. Coghlan v. Trumbo,

Mo., 179 S.W.2d loc. cit. 706; Ulrich v. Kiefer, Mo.App., 90 S.W.2d loc. cit. 145.

■ In the first place, the jury could follow the instruction on damages in this case and arrive at a verdict of $531, the fifty cents must have been an error in calculation. They were instructed to award in general damages "in such sum as you find and believe from the evidence will fairly and reasonably compensate him for any and all injuries which he received and suffered." In connection with this general direction the jury were told that they "may" take into consideration (1) the nature, character and extent of the plaintiff's injuries, (2) the pain and suffering of body and mind, (3) past and future physical disability and impairment, (4) reasonable expenses for medical care, (5) impairment of his power and ability to work, and (6) the damage to his automobile. As indicated, the jury could find from the conflicting evidence that the plaintiff's complaints were all subjective, that his injuries were in fact trivial or not serious in the end result and they have awarded him his actually established financial losses. Thus upon this record "the verdict can be reasonably accounted for on the theory that the jury believed only enough of plaintiff's evidence to fix liability" (Grodsky v. Consolidated Bag Co., 324 Mo. loc. cit. 1083, 26 S.W.2d loc. cit. 624) and having commensurately made an award there is no occasion for this court's interference. Grayson v. Pellmounter, Mo.App., 308 S.W.2d 311.

For the reasons indicated, the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.