247 S.W.2d 809 (1952)
POLIZZI
v.
NEDROW.
No. 42659.
Supreme Court of Missouri, Division No. 1.
April 14, 1952.
*810 Keegan & Rickhoff and Gregg William Keegan, St. Louis, for appellant.
John J. Cole, Thomas J. Cole, St. Louis, for respondent.
VAN OSDOL, Commissioner.
Plaintiff instituted this action for $10,000 for personal injuries sustained in an automobile collision at the intersection of Eighth Street and Franklin Avenue in St. Louis. A jury returned a verdict for plaintiff awarding $100 damages. Plaintiff filed a motion for a new trial assigning as a ground therefor that the verdict was so grossly inadequate "as to be conclusive evidence of the fact that it was the result of passion and prejudice on the part of the jury and of misconduct on their part toward the plaintiff." The motion also assigned that portions of defendant's argument to the jury was "advanced to prejudice" the jury against plaintiff. The trial *811 court overruled the motion, and plaintiff has appealed from the final judgment entered.
Herein upon appeal plaintiff contends the trial court abused its discretion in overruling the motion for a new trial. Plaintiff asserts that the amount of the award was so grossly inadequate as to demonstrate the verdict was the result of passion, prejudice or partiality and, moreover, that the argument of counsel for defendant was calculated to arouse the passion and prejudice of the jury.
The question of the amount of an award of damages is primarily for the jury. The trial court too has some discretion in granting or refusing a new trial because of the size of an award. But if, upon review, a verdict is considered so grossly inadequate (or excessive) as to indicate that it resulted from passion and prejudice, it should be set aside. In the instant case the trial court in the exercise of its discretion overruled plaintiff's motion for a new trial; and in determining if the trial court abused its discretion in overruling the motion we will consider the evidence favorable to the verdict returned and supporting the trial court's ruling, because it was the peculiar province of the jury on the trial and of the trial court on motion for a new trial to pass upon the credibility of the witnesses and weigh the evidence, and our appellate courts do not ordinarily weigh the evidence in an action at law wherein the factual issues have been submitted to a jury. Roush v. Alkire Truck Lines, Inc., Mo.Sup., 245 S.W.2d 8; Conner v. Neiswender, 360 Mo. 1074, 232 S.W.2d 469; Hemminghaus v. Ferguson, 358 Mo. 476, 215 S.W.2d 481; Wilhelm v. Kansas City Public Service Co., 358 Mo. 6, 212 S.W.2d 915; Coats v. News Corporation, 355 Mo. 778, 197 S.W.2d 958; Coghlan v. Trumbo, Mo.Sup., 179 S.W.2d 705. And in considering the question of inadequacy (or excessiveness) of an award as tending to indicate the bias, passion or prejudice of the jury, the appellate court may consider the size of the award in connection with other matters of record having a prejudicial tendency. Grodsky v. Consolidated Bag Co., 324 Mo. 1067, 26 S. W.2d 618.
Rather early in the Sunday morning of May 22, 1949, plaintiff, twenty-one years old, and her three sisters, Margie, Ann and Phyliss, and a Mrs. Fidelio and a Mrs. Buselacki were in the Ford automobile belonging to the Polizzi family. Plaintiff's sister Ann was driving the automobile. Mrs. Fidelio was seated on the right of Ann, and plaintiff was sitting on the right of Mrs. Fidelio. The other three were seated in the rear seat of the car. They were proceeding southwardly on Eighth Street. Defendant's Nash automobile, moving on Franklin Avenue, approached and passed into the intersection of Eighth and Franklin from the west and forcibly struck the Polizzi car as it moved over south of the center of Franklin. The front of defendant's vehicle came into contact with the right side of the Polizzi car at about the right rear door thereof. Plaintiff testified that Mrs. Fidelio was thrown against plaintiff and caught plaintiff "in the ribs several places," and "my head hit against the dashboard." Plaintiff's right arm also struck the right front door of the Polizzi car.
After the collision, plaintiff and the others of plaintiff's party were taken to the hospital in a cruising police-patrol car. Plaintiff was not examined at the hospital. She told the hospital staff she wished to see her own physician. Plaintiff was then taken by automobile to the police court which is about two blocks from her home, and, after an interview with the police authorities, she walked to her home. She lay on her bed most of that day. She complained of her lower back, left hip and right arm, and of dizziness and nervousness. Plaintiff visited the office of her physician the following day, Monday, May 23rd. Her doctor gave her heat treatments, and prescribed medicines to ease pain and allay nervousness. Plaintiff said two bruises "showed up" two or three days laterone on the right arm, the other on the left hip, the latter bruise being in area about the size of an egg. Plaintiff testified that she went to see her doctor every day *812 that week, and that she visited the doctor thereafter "around once or twice every other week" for about three months. She stated she continues to suffer pain, is nervous, has headaches, suffers dizziness, and when she gets "in an automobile since the accident it makes me nervous and shaky and everything."
Plaintiff returned to her work as a stenographer the first of the week following that of her injury. She later was absent from her work two days, but she did not "exactly know" that this was due to injury sustained in the collision. She testified she had been in good health prior to the collision. But plaintiff had had appointments with the family physician on the average of once a month for about five years"I had colds and laryngitis." She sustained no loss of earnings as a result of her injuryher employer paid her for the "two days" and for the "week after the accident."
Plaintiff's physician testified he had seen plaintiff as a patient on May 23rd, 25th, 27th, on June 1st, 6th, 13th and 27th, and on August 24, 1949. (He also examined plaintiff on May 20th and September 20, 1950, and on January 13, 1951.) Plaintiff complained of extreme nervousness and dizziness, and pain in the left hip, lower back and left chest. The doctor didn't remember noticing any external evidence or objective symptoms of any injury. He saw no cuts, lacerations, or discolorations upon her body. He thought she was in pain. He gave her medicine to ease her pain, and a sedative for her nerves. He was of the opinion that plaintiff had experienced a severe nervous shock, and that she had sustained a sprain or strain of the back and a contusion of the chest. He thought plaintiff would require some future medical attention for her nervousness. The doctor explained that he is obliged to rely upon the statement of a patient as to the patient's pain or suffering. You have "to take her word for it." He did not observe any muscle spasm, an objective sign which sometimes attends a serious and painful injury. The doctor testified that a reasonable charge for his services was about $100. This included his examinations of plaintiff, his treatment, and the X-ray pictures. In stating this amount of reasonable charge, the doctor also took into consideration the fact that he had to appear in court. He estimated a reasonable fee for his testimony as approximately $50.
A physician, witness for defendant, examined plaintiff about eleven months after she was injured. Plaintiff complained of pain in the lower part of the back on the left side, and on the outside of the left hip; headaches; dizziness; and recurring pain in the upper abdomen and lower chest. The doctor testified he could find nothing objectively indicating any injury or abnormality. X-rays taken under the doctor's supervision revealed no evidence of any injury, recent or "at any other time."
The verdict of $100, only $50 more than the reasonable charge for medical treatment of plaintiff, was small. However, it reflects a justifiable view of the evidence considered from a standpoint favorable to the verdict. The jury was justified in finding that plaintiff's injury was inconsequential and that her complaints of continuing pain, dizziness and nervousness were made with the purpose of magnifying the seriousness of her injury. Plaintiff had no fractured bones; she sustained no cuts, no lacerations, no abrasionsthere was no external evidence and no X-ray disclosure of any injury (except plaintiff's own testimony of bruises on her hip and arm). In these material respects the evidence of plaintiff's injury was not like the evidence of the injury of plaintiff in the case of Grodsky v. Consolidated Bag Co., supra, a case cited by plaintiff-appellant.
In the Grodsky case, plaintiff introduced evidence tending to show she had suffered multiple fractures of the pelvis causing a "crushing" of the supporting and contracting surfaces between the pelvis and the sacruma disturbance of the sacroiliac joints. The injuries to the bones were serious and were of such a character as to almost force the inference of severe pain, supporting the plaintiff's complaints of pain and suffering. The plaintiff was hospitalized and placed in a plaster cast for *813 several weeks, and was confined to her bed for several months. The evidence indicated a probability of permanent limitation of the motion of the hips, and other probable consequences particularly noticed in the Grodsky opinion. The jury's award of $1,000 (but $160 more than the actual expenses incident to plaintiff's treatment) was grossly inadequateso grossly inadequate, it would seem, as to justify, in itself, the setting aside of the verdict. The defendant did not attempt to minimize the seriousness of plaintiff's injurydefendant introduced no evidence to disprove the almost conclusive evidence introduced by plaintiff tending to show the gravity and probable permanency of her injury. And this court was convinced that the sinister influences (invited by the manner of defendant's cross-examination of plaintiff, stressing her father's business, and her race and foreign birth) entered into the case and were reflected in the grossly inadequate award.
As plaintiff-appellant has stated in her brief, she and the other five persons who were in the Polizzi car are of Italian descent or origin. Defendant had inquired of the plaintiff's witnesses, occupants of the Polizzi car, concerning their claims of injuries sustained in the collision. Defendant while on the witness stand was asked if he had talked with the occupants of the Polizzi car at the scene of the casualty. Defendant answered, "I got out of my car * * * and I started asking them their names, but they were all talking at once, some kind of a foreign talk, I think Italian but I wouldn't be sure, and I couldn't understand anything they were saying, * * * and so I just said we better wait until the police came." Again, upon being asked if he had inquired of the occupants of the Polizzi car concerning their possible injuries, defendant said, "I did, but they never answered me at first when they were talking Italian, and then they talked it with the (police) Sergeant, and I don't know what they were talking about."
Plaintiff-appellant argues that the interrogation of the witnesses for plaintiff concerning their claims of injury, "coupled with" the statement by defendant referring to the witnesses as foreigners and Italians, "plus the prejudicial and inflammatory argument (of defendant's counsel), could only result in a biased and unjust verdict."
Plaintiff-appellant does not herein contend the inquiry relating to the claims of plaintiff's witnesses was not relevant or had been erroneously allowed by the trial court over plaintiff's objection. And, while no one's case is to be prejudiced in any court of justice because one is of Italion or of other foreign birth or descent or because one speaks in a foreign language, there was no other statement by any witness and no comment by defendant's counsel during the trial or during argument to the jury in the instant case which in any way referred to plaintiff as an Italian or as a foreigner. In the situation we think it would be going afield to infer that prejudice on the part of the jury against plaintiff was injected merely because of defendant's reference to the fact that plaintiff or her witnesses were Italian, especially where, as stated, the fact was apparently not mentioned or stressed in such a way as to indicate it was calculated to create prejudice against plaintiff.
As stated, plaintiff-appellant contends the argument of counsel for defendant was designed to arouse the prejudice of the jury. Although plaintiff's amount of recovery is small, yet, considering the evidence from a standpoint favorable to the verdict, the award is not so grossly inadequate as to indicate it was due to the passion or prejudice of the jury. And we will now examine the contention of plaintiff-appellant that the argument of defendant's counsel was prejudicial. Here we must bear in mind that the trial judge, who was present and who could see the effect, prejudicial or otherwise, of the argument, was in a better position than are we to gauge the effect of the argument upon the jury. In borderline cases, the trial court's ruling in permitting or restraining argument will be generally deferred to upon appeal. Burow v. Red Line Service, 343 Mo. 605, 122 S.W.2d 919. And in our case the trial court has considered the asserted prejudicial effect of the argument *814 of defendant's counsel (and has considered the smallness of the award) and has overruled plaintiff's motion for a new trial.
Plaintiff-appellant does not herein make the specific point that the trial court erred in its rulings upon objections to the questions propounded in defendant's cross-examination of plaintiff, yet in her brief plaintiff-appellant has recited numerous instances in which she contends she was unduly pressed upon cross-examination. We have examined the record of the cross-examination of plaintiff, and we have found that in many of these instances of which the plaintiff-appellant complains the trial court promptly sustained plaintiff's objections and did all that plaintiff's counsel had requested. These instances which we have mentioned were not such as would be prejudicial to plaintiff save and except as any brisk, thorough cross-examination of a plaintiff might be said to be prejudicial.
The cross-examination of plaintiff disclosed that she had made different statements by deposition and in her testimony at the trial relating to the number of visits she had made to her physician's office. The calls were greater in number as stated by plaintiff in her deposition and in her testimony at the trial than the number as stated by her physician. During cross-examination of plaintiff, defendant's counsel bore down upon this unfortunate variance between plaintiff's statements and the testimony of her physician. We are not inclined to say that defendant's counsel was not entitled to do this, nor do we say counsel was not entitled to pursue a vigorous, searching cross-examination of plaintiff and her witnesses. Nevertheless, in this connection, defendant's counsel said in his argument to the jury, "I didn't want to haggle with her (plaintiff) about these monthly visits and embarrass her, because I have been taught to respect womanhood, and I do have a mother, and a wife and sister, and they have taught me to respect womanhood, even though Mr. Keegan (counsel for plaintiff) has probably indicated to the contrary." Whereupon plaintiff's counsel objected as follows, "I object to that, going outside of the record, and improper comment by counsel, and I ask that the jury be instructed to disregard that." And the trial court said, "Yes, the jury will disregard that part of the argument."
The argument of plaintiff's counsel has not been incorporated into the record, and we cannot know whether or not plaintiff's counsel had alluded to counsel's disrespect for womanhood. Defendant's counsel may have been intending to ingratiate himself with the jury (plaintiff-appellant says six of the jurors were women), but, in any event, the trial court took the action which counsel for plaintiff had requested, and, although defendant's counsel was not within the record, yet we believe his remarks were not of such a character as to inflame the prejudice of the jury against plaintiff. However, we do wish to discuss a portion of the argument of defendant's counsel which is of a more serious nature.
Defendant's counsel urged,
"This Court House wasn't built for such cases as this, and you people who pay the taxes aren't obligated or required in the contemplation of the law to leave your stores, businesses, homes and children and listen to a case of this kind. This is a case where you have had to listen for two days to a bunch of half truths and distortions, and never have I heard so much of that as has been presented here to you, and I am going to leave it up to the jury to bring in a proper verdict, because there is something else: There is six people sitting back here waiting to hear what you are going to do in this case, and if you bring in a verdict for plaintiff the same thing will happen five times again to you ladies and gentlemenlistening for two days to this kind of a case.
"Mr. Keegan: I object to that, highly improper argument, made only for the purpose (of) prejudicing and influencing the jury against this plaintiff, and I ask your Honor to instruct the jury to disregard that part of his argument.
"The Court: Yes. You jurors will disregard any reference to other *815 cases; strike that out of your minds and consider it as having been not said. Just forget it entirely.
"Mr. Cole: There are five other women out here in this court room and they will be waiting to find out what you do in your verdict in this case. You are obligated under the law not to give this plaintiff a cent more than she is entitled to."
In this instance defendant's counsel went without the record, and injected into his argument matters which a jury should in no way consider in returning a verdict. Counsel was in some measure overreaching in minimizing plaintiff's case; was appealing to the jurors as tax-paying citizens; and was in a way holding over the jurors the threat of being required to sit as jurors in the trial of actions instituted by the five occupants (other than plaintiff) of the Polizzi car. Moreover, counsel for defendant manifested a tendency to override the trial judge's ruling. The trial court did promptly sustain plaintiff's objection, however, and admonished or advised the jury to disregard counsel's reference to other cases. The trial court's admonition to the jury did not entirely cover all of the objectionable argument, but apparently the trial court's admonition did apply to the part of the argument to which plaintiff's counsel was objecting; at least plaintiff's counsel seemed satisfied with the trial court's ruling and admonition at the time. We believe the improper argument was not such as to compel the finding that plaintiff was prejudiced thereby. This is not a case wherein the trial court by its ruling gave sanction to counsel's objectionable remarks, Barnes v. City of St. Joseph, 139 Mo.App. 545, 123 S.W. 541; or later, in the exercise of discretion, sustained a motion for a new trial specifying stated improper argument as the ground for the sustention of the motion, Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482.
We are of the opinion the record does not justify our setting the verdict aside and remanding the cause for a retrial on the ground smallness of the award was due to bias, prejudice or passion of the jury. We believe the trial court did not abuse its discretion in overruling plaintiff's motion for a new trial.
The judgment should be affirmed.
It is so ordered.
LOZIER and COIL, CC., concur.
PER CURIAM.
The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.
All of the Judges concur.