Blanche GRAYSON, Appellant (Plaintiff),

v.

Thomas V. PELLMOUNTER, Respondent (Defendant).

No. 22677.

Kansas City Court of Appeals.

Missouri.

Dec. 2, 1957.

O. Hampton Stevens, Kansas City, for appellant.

Richard H. Beeson, David P. Dabbs, Dean F. Arnold, Kansas City, for respondent.

CAVE, Judge.

This action seeks to recover damages for personal injuries resulting from an automobile collision. A jury trial resulted in a verdict and judgment for the plaintiff for $500, and she filed a motion for new trial complaining of the inadequacy of the verdict; and the admission of certain evidence, which she contends directly affected the issue of damages. Plaintiff is not claiming damages in excess of $6,000, and this court has jurisdiction. Secs. 3 and 13, Art. V, Constitution, V.A.M.S., and Beasley v. Athens, 365 Mo. 158, 277 S.W.2d 538.

On August 31, 1954, at about 3:30 P.M., plaintiff, a colored woman, was a passenger in a taxicab which was being driven south on Oak Street between Ninth and Tenth in Kansas City, Missouri. Defendant Pellmounter was driving his automobile southward along the same street, and about 25 or 30 feet behind the cab. The cab stopped suddenly, and defendant's car collided slightly with the rear of the cab. There was no damage to defendant's car and only a slight scratch on the rear fender of the cab.

Plaintiff was riding in the rear seat of the cab and immediately after the collision she complained of pain in her head and neck. She was taken to the General Hospital, but there is no evidence that she received any treatment or examination at the hospital. Later she was taken, by her nephew, to her sister's home a few blocks away.

She testified that "when I got home my head and neck was still hurting * * * and my sister called Dr. Zellermayer * * he bandaged my neck up here and then gave me some medicine to make me rest." During the night she had a nosebleed and said that she spent most of the time in bed for the next four or five weeks. Dr. Zellermayer saw and treated her three or four times during the next month, but did not see or treat her again until in December, 1956, a short time before the trial in January, 1957.

About November 1, 1954, plaintiff left Kansas City and went to Des Moines, Iowa, to preach at a church in that city. She remained there until the following spring, but did not preach much "because I could not keep my thoughts together, because every time I would think too much or think too hard it makes my head hurt and when that misery starts it makes me dizzy and everything and nervous". She received no medical treatment while in Des Moines. At the time of the trial, plaintiff still complained of headaches and pain in the neck.

On cross-examination, she testified that she was 46 years of age; about 5 feet 4 inches in height, and at the time of the accident weighed 240 pounds, but at the time of the trial weighed about 196 pounds; that she was not rendered unconscious at the time of the collision, but was dazed and did not recall how the accident occurred or how she got to the hospital; but that she had no cuts or bruises on her head or anywhere about her body which were due to this collision.

Dr. Zellermayer examined her on the evening of the accident and testified that

"at the time I saw her she had a rigidity of her neck, tenderness and rigidity of the neck, a complaint of dizziness and some backache as well, and had a slight nosebleed, but the most marked thing was the rigidity and the stiffness of the neck, and the pain of moving the neck either actively or passively. * * * I immobilized her neck by strapping it and gave her some medication and gave her instructions to stay in bed and apply some compresses to the neck". He treated her a few times between the day of the accident and September 29th, approximately one month. That was about the time she left Kansas City and went to Des Moines. He did not see her again until in December, 1956, shortly before the trial, and when asked what her condition was, replied, "Well, she still had some stiffness of the neck, but the motion—that she could move her neck".

Dr. George Taft examined the plaintiff in December, 1955, approximately 15 months after the accident. At that time "she complained of headache, pain in the neck and back. * * * I found on examination a sprained neck, spinous area, lumbar spinous area, likewise with ligamentous damage". He treated her over a period of several months and "gave her physiotherapy and analgesics. * * * I gave her ultrasonic treatment, which is not a light. * * * It is something old in Europe but not so old in this country. It is a very deep form of physiotherapy, based on some of these things they are talking about now in the atomic energy studies, and it is supposed to work under the same lines of the atomic energy work and it is supposed to almost do marvelous things to these people who have been injured and who have had arthritis and things like that". The last time he examined her was shortly before the trial and stated that he found her condition "relatively good. * * There were some limited motion of the spine, of the neck".

At the request of the defendant, Dr. Korth, whose qualifications were conceded, examined the plaintiff on June 6, 1955, ap-

proximately 10 months after the accident. He made a thorough examination, including the taking of X-rays, and detailed at length his findings of her physical condition. His final conclusion was: "I could find nothing in my examination which I felt was due to an accident on August 30, 1954. She had several medical problems, obesity being the most prominent one, of the dowager's hump, the posture problems which could possibly be corrected by loss of weight and very bad teeth are an aggravating factor in creating rheumatic problems in her neck, because it has been long known bad teeth are a factor in producing rheumatism or arthritis. * * * She has a bad case of pyorrhea, and the loose teeth I found * * * were naturally due to the gum recession, of the disease of the gums. * * * She had a dowager's hump, which is a defect which comes in certain people, * * * it is a posture position and has nothing to do with injury or any other defect. * * * This patient had no objective evidence of a whip-lash injury".

We have outlined the evidence concerning plaintiff's injuries, and the question is whether the trial court abused its discretion in overruling plaintiff's motion for new trial on the ground of inadequacy of the verdict.

On this issue the trial court's approach to the question is materially different from that of the appellate court. The trial court has the right to weigh the evidence; and in performing its function of determining the question of the excessiveness or inadequacy of the verdict, it may and should consider any conflicting evidence upon the nature and extent of the plaintiff's injuries, and place its own evaluation upon all the evidence from both sides of the case in the light of its own peculiar opportunity to see and observe, not only the plaintiff herself, but also the various witnesses who testified. Where the trial court has let the verdict stand, it is the duty of the appellate court to consider the evidence which tends most strongly to support the verdict, and to disregard conflicting

evidence. Sanders v. Illinois Central R. Co., 364 Mo. 1010, 270 S.W.2d 731, 737; McCormack v. McNamee, Mo., 274 S.W. 2d 272; Roush v. Alkire Truck Lines, Mo., 245 S.W.2d 8, 10.

Under the evidence we think it is perfectly apparent that the jury could have found that plaintiff did not suffer any serious injuries as a result of the accident. Certainly we cannot hold that the trial court abused its discretion in overruling plaintiff's motion for new trial on the ground of inadequacy of the verdict.

However, plaintiff contends that the court erred in admitting a certain portion of a petition which she had filed against the Kansas City Public Service Company for injuries received in a prior accident. The only portion of that petition which was introduced and read described the injuries which she received in that accident, among which were injuries to her back, spine, spinal column, and all the bones, muscles, tissues and nerves thereof which caused a permanent stiffness, lameness, soreness and weakness. The petition in the instant case charges substantially the same injuries. In fact, the two petitions are quite similar in charging injuries suffered by the plaintiff.

She objected to the introduction of the first petition for the reason she had not been cross-examined about the prior accident and the injuries resulting therefrom, and that the petition was not the proper manner of impeachment. That is not the theory upon which the first petition was admitted in evidence. It was admitted because of the similarity of the claimed injuries. In Craig v. United Rys. Co. of St. Louis, Mo., 185 S.W. 205–207, the supreme court held that under proper circumstances a defendant may read in evidence so much of a prior petition as refers to plaintiff's injuries sued for in a subsequent suit. This for the reason that a defendant "should be protected from paying for the same injuries twice".

Plaintiff relies on Marrah v. J & R Motor Supply Co., Mo.App., 165 S.W.2d 271, an opinion by the St. Louis Court of Appeals. That case is distinguishable because at page 275 the court said: "There was no showing, or attempt to show, that the plaintiff sustained any injury in either of these prior accidents such as the injuries sustained in the accident involved in this case as shown in evidence, or that any of the injuries sustained in the accident involved in this case as shown in evidence had their origin in either of these prior accidents". That is not the situation in the present case. The alleged injuries in both petitions are substantially the same. The St. Louis Court of Appeals was discussing the rule of law, "that a witness may not be cross-examined as to a distinct collateral fact for the purpose of afterwards impeaching his testimony by contradicting him". There is no question about the correctness of that rule, but it is not applicable here.

The plaintiff also complains that the court erred in permitting the defendant Pellmounter to introduce a portion of plaintiff's original petition in this case. The question arises in this manner: Plaintiff's original petition named the American Cab Company, a corporation, as a defendant. Later she filed an amended petition which was identical to the original except she substituted for the corporation, one Thomas Manzella, doing business as the American Cab Company, as a defendant. The original petition charged the cab company with certain specific acts of negligence, and the amended petition charged Manzella with the same acts of negligence. At the close of plaintiff's evidence, she dismissed the cause against Manzella and the case proceeded against the defendant Pellmounter. At the close of all the evidence, the defendant, Pellmounter, offered in evidence that portion of the original petition which plead specific negligence on the part of the cab company. The only objection to this offer was that the entire petition should be introduced, which the court refused.

The objection does not specifically preserve the point plaintiff now seeks to make; that is, that it influenced the jury in the award of damages. The original petition which plead specific negligence of the cab company which caused the accident was introduced on the issue of Pellmounter's *liability*, not on the question of plaintiff's injuries. The jury found against Pellmounter on the issue of *liability* and plaintiff is in no position to complain thereof. We cannot visualize what effect this bit of evidence could or should have on the question of plaintiff's injuries.

The judgment is affirmed.

All concur.