Sally CAMMARATA (Plaintiff), Appellant,

v.

Leon R. PAYTON, d/b/a Independent Cartage Company (Defendant), Respondent.

No. 46456.

Supreme Court of Missouri,

Division No. 2.

July 14, 1958.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 13, 1958.

Carl R. Gaertner, and Morris B. Kessler, St. Louis, for appellant.

Schwartz & James, Harry M. James, St. Louis, Joseph Nessenfeld, St. Louis, of counsel, for respondent.

BARRETT, Commissioner.

In this action to recover $18,000 for personal injuries a jury returned a verdict

for the defendant and the plaintiff has appealed. Briefly, the circumstances were that on September 6, 1956, the plaintiff, Sally Cammarata, with her three children, were traveling north on 12th Street at the point where 12th Street curves to the west and merges into 13th Street. Mrs. Cammarata had been driving at a speed of about twenty miles an hour; at or in the curve and while in a line of traffic she reduced the speed of her car to ten miles an hour and as she slackened speed or stopped an oil transport truck driven by Robert Schmidt struck the rear of her automobile. Mrs. Cammarata claims to have been driving her automobile in the first vehicular traffic lane ahead of the defendant's truck. According to the defendant's evidence she had been driving in the second vehicular lane and in the merging streets when about eight feet ahead of the truck suddenly turned to the right and across the traffic lane in front of the truck and within a car's length stopped her automobile, with the consequence that the truck bumped the left rear of her automobile.

Upon her appeal Mrs. Cammarata makes six assignments of error in connection with her cross-examination, the argument of defense counsel and the giving of instruction two. In all of these assignments it is urged that the trial court erred in overruling her motion for a new trial and that this court should reverse the judgment entered upon the jury's verdict and grant her a new trial. In one of her assignments it is urged that the court erred in permitting defense counsel to cross-examine her as to prior claims she had had over the years in the absence of any showing that her present complaints were the same or similar to injuries received in the prior accidents and claims. In another assignment it is urged that the court erred in failing to declare a mistrial or to reprimand counsel when he inquired about lawsuits filed on behalf of her children. There are two assignments in connection with defense counsel's argument to the jury, one that the court erred in refusing to sustain her ob-

jection to his statement that the plaintiff was a professional litigant and that additional suits would be filed, and second that the court erred in refusing to instruct the jury to disregard counsel's statement that he wished the jury knew about the litigation plaintiff had in the courthouse. As to instruction two it is urged that the instruction was not supported by the evidence and was indefinite, misleading and confusing.

In her motion for a new trial and brief it is first urged that the court erred in admitting in evidence, over her objection, that part of her cross-examination concerning prior claims for personal injuries, particularly "injuries to portions of plaintiff's body not injured or claimed to be injured in the instant case." After examining the plaintiff at some length as to the details of the accident defense counsel asked this question: "How many times have you, Mrs. Cammarata, had claims for personal injuries?" The court immediately called counsel to the bench and, evidently out of the jury's hearing, this followed: plaintiff's counsel said, "I object to that, I object to the question. I object to any prior claims she may have had—." Defense counsel said, "I want to show this woman is a professional claimant, and I have a right to show it." The court indicated that he did not agree with defense counsel's statement and said that counsel had "a right to show prior claims relating to the same injuries. It goes to the credibility of the witness." Plaintiff's counsel said, "I wish to make my objection." The court said, "Have the records show the objection is overruled." There was not then any other or further objection or request for action on the part of the court.

Defense counsel again inquired of Mrs. Cammarata, "how many prior claims have you had for personal injuries?" She answered, "three." Counsel then went into the various claims, the first one when, the witness said, she was fifteen (she was 38 when the case was tried) when a streetcar door closed on her, the second when she

was twenty-one and a streetcar door again "closed on my chest." Then six years ago she had a third claim against the streetcar company and a fourth claim resulting from a vehicular collision on icy streets. In that accident, in 1951, she sustained an injury to her back and Dr. Wennerman, her family doctor, treated her for that injury and in addition to her back he treated her for nervousness and a possible miscarriage. Mrs. Cammarata did not remember how much she had been paid for that claim. Then she had a claim against a Van Horn restaurant. In both of her latter claims she was represented by one of the lawyers now representing her. Finally, after developing that Mrs. Cammarata had been in the taxicab business, defense counsel said, "You have had claims arising out of the taxicab business that yielded in too, haven't you?" Upon objection and after another colloquy without the hearing of the jury the court sustained an objection to that question. Counsel then made an offer of proof that she had other lawsuits "involving the same lawyer in this case."

At this juncture, for the first time since his initial objection to "other claims," plaintiff's counsel moved "that the testimony relative to any injuries she may have had on those, are not pleaded in the lawsuit, and should be stricken and the Jury instructed to disregard it." He repeated and specifically asked that it be stricken and the jury instructed to disregard "all reference concerning any prior injuries or claims that the Plaintiff may have had regarding other portions of her body, than those pled in the lawsuit, in this lawsuit." To the latter motion the court said, "Overruled." Defense counsel then returned to her prior accidents and the specific injuries she had sustained in them; in the first one (when she was fifteen) a streetcar door closed on her leg, in the second the door closed on her chest, and in 1951 she had an injury to her back, nervousness and a possible miscarriage. She said, as to her 1951 injuries, that all the movements of her

back were impaired but that it cleared up within a year.

■ The manifestly inflammatory and improper statements that plaintiff was a professional litigant were not made within the hearing of the jury. Except for the implication from defense counsel's questions (Dent v. Monarch Life Ins. Co., 231 Mo.App. 283, 98 S.W.2d 123) there was neither charge nor proof that any of Mrs. Cammarata's claims were fraudulent, and the fact that she may have been a habitual litigant does not necessarily reflect on her credibility and neither may an unfavorable inference be drawn from her assertion of legal rights. Dietz v. Southern Pac. Ry. Co., 225 Mo.App. 39, 28 S.W.2d 395. While the number and details of her claims going back over a period of more than twenty years were not in and of themselves relevant they were not immaterial for all purposes. Louis Steinbaum Real Estate Co. v. Maltz, Mo., 247 S.W.2d 652, 31 A.L.R. 2d 1052. In so far as her prior claims may have been for injuries for which she now claims damages they were of course pertinent (Craig v. United Rys. Co. of St. Louis, Mo., 185 S.W. 205; Donk v. Francis, 351 Mo. 1053, 174 S.W.2d 840) and, therefore, were not subject to either exclusion or review upon general objection. Kansas City v. Thomson, Mo., 208 S.W.2d 216; Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 157 A.L.R. 598. The original objection was to "the question" and specifically to "any prior claims" and for a time it would appear that defense counsel was insisting upon the admissibility of the evidence on that improper ground but the court was admitting it upon another and proper theory—that she may then have been making a claim for injuries received in other accidents. Plaintiff's counsel in his final motion to strike and in his brief here contends that the prior claims, by reason of their remoteness and in the absence of any showing that her present complaints were the same or similar to injuries received in prior accidents, were improperly admitted.

Marrah v. J & R Motor Supply Co., Mo. App., 165 S.W.2d 271.

In addition to the immediate circumstances, in considering the assignments concerning the cross-examination and argument, it is important to set forth and note the full background and weigh the incidents in the context of the trial. Williams v. St. Louis Public Service Co., 363 Mo. 625, 635, 253 S.W.2d 97, 103. The first time the subject of any of the plaintiff's prior claims or injuries was mentioned was in the opening statement of plaintiff's counsel. He had detailed for the jury her present injuries and disabilities, the pain she suffered in her neck and head, resulting he said from a whiplash injury, pain and numbness shooting through her arm and hand causing a tingling in her fingers, nervousness, pain in her hips and legs, injury and pain in her back—even an intervertebral disc injury—and pain all the way to her toes. At this juncture plaintiff's counsel stated, "by the way," that she had sustained a prior injury to her back, six or seven years ago, and was under a doctor's care for a month and the whole thing cleared up in a year. In her direct examination Mrs. Cammarata testified to her present complaints which, briefly, included pain in her neck, shoulder and back, headaches, pain in her back down through her thighs, knees, toes, shoulders and arms. She then testified to an injury to her back six or seven years ago which she said "cleared up" a year after the accident. In addition, her petition was the conventional charge of injury to practically every bone and part of her body, shock and nervousness, all serious and permanent.

As indicated, on cross-examination, defense counsel finally got down to the specific injuries she had sustained in her prior claims, first an injury to her leg, then her chest and finally her back, nervousness and a possible miscarriage. One of her medical witnesses, her family doctor, voluntarily testified to her claim against a Van Horn restaurant resulting from her encountering glass in a sandwich. In connection with this witness there was no objection to any of the cross-examination including that dealing with one of her counsel in this and other claims. When defense counsel attempted to go into her taxicab claims the court promptly sustained an objection and the matter was not pursued. While the cross-examination showed that in her prior claims Mrs. Cammarata had sustained injuries to a leg, her chest and back and had asserted resulting nervousness and disability there was no proof that she was now suffering or had any disability from those prior injuries. The substance of the defendant's medical testimony was that Mrs. Cammarata had no present demonstrable injury of any kind resulting from this or any other mishap, and it is possible that the jury may have so found. Nevertheless, to consider the matter summarily but in the context of the trial, including its origin in the case, the nature of the specific objections and the court's rulings, it may not be said for the reasons asserted that the cross-examination was manifestly inflammatory nor with confidence that the trial court obviously abused its discretion in refusing to grant plaintiff a new trial. V.A.M.S. § 512.160; Williams v. St. Louis Public Service Co., supra; Stutte v. Brodtrick, Mo., 259 S.W.2d 820; Blanford v. St. Louis Public Service Co., Mo., 266 S.W. 2d 718; annotation 109 A.L.R. 1089.

The second matter complained of in connection with plaintiff's cross-examination was this question: "Now, within the past two years you have also brought two lawsuits on behalf of your children, where they were hurt or injured, haven't you?" The court immediately sustained a general objection to the question. Plaintiff's counsel then asked for a reprimand and a mistrial. The court declined, erroneously in our view, to reprimand counsel, and refused to declare a mistrial. However, the court did plainly instruct the jury to disregard the question and informed them that suits or claims by the children had nothing to do with the case and were not to be considered. Following this defense

counsel inquired, "Now, you do have a claim arising out of this accident for your children, do you not?" Mrs. Cammarata answered, "My children got hurt." Plaintiff's counsel, instead of addressing himself to the court and making an objection, volunteered this statement: "The children have claims, one girl got hurt seriously." The court overruled defendant's objection to that statement and following that, without objection, defendant's counsel developed that there were claims for the children.

Again, it is important to note the difference upon review when the trial court grants a new trial because of improper examination or conduct and when the court considers the matter, exercises its discretion, and overrules the motion. In this regard see the contrasting cases relied upon by counsel: O'Hara v. Lamb Const. Co., Mo.App., 197 S.W. 163; Dwinell v. Thompson, Mo., 243 S.W.2d 988, and Willis v. Wabash R. Co., Mo., 284 S.W.2d 503. Again in the context of the trial and the manner in which the court and counsel responded, it may not be said that there was a manifest abuse of discretion as to a matter "materially affecting the merits of the action." V.A.M.S. § 512.160; American Displays v. E. T. Swiney Motors, Mo. App., 240 S.W.2d 732; Higgins v. Terminal Railroad Ass'n, 362 Mo. 264, 241 S.W.2d 380. In the "borderline" instances of cross-examination as to irrelevant matters, misconduct of counsel and improper argument some deference is due the views of the trial court. Harris v. St. Louis Public Service Co., Mo., 270 S.W.2d 850, 854.

The two assignments that the trial court erred in refusing to sustain an objection to defense counsel's argument and in refusing to instruct the jury to disregard another phase of the argument relates to these assertions: "Gentlemen, there is one final thing I have to say about this litigation. Sally Cammarata has forgotten more about lawsuits than any of us will perhaps ever know. She ran a fleet of taxicabs until a few months before the accident *She's a professional litigant in this Court House, and by the time this case is over with you'll find her husband filing a lawsuit for her medical expenses,* and you'll note there is nothing in these instructions to permit you to include anything for medical services, because that is a part of the husband's case. * * * I say under the law if Sally Cammarata so elected she could have asked for medical expense in the case, and she would have done so, but she didn't like it, because *she's going to have to be back in Court again with the husband's, Tom Commarata's claim, and she's going to be in here with the two girls, and believe me, there wasn't a scratch on them in the accident. I wish for you gentlemen to know the litigation she has in the Court House.*"

The objection is to the italicized language and the respondent's claim of the insufficiency of the objections at the time and failure to particularize the objections in the motion for a new trial and in the briefs is beside the mark. The argument was indeed improper, some of it without foundation in the record except counsel's unsupported assertion, and the court would have been justified in reprimanding counsel or in granting a new trial upon general objection or even without objection. Leaman v. Campbell 66 Express Truck Lines, 355 Mo. 939, 199 S.W.2d 359; Beer v. Martel, 332 Mo. 53, 55 S.W.2d 482; Holtz v. Daniel Hamm Drayage Co., 357 Mo. 538, 209 S.W. 2d 883. Furthermore, this court is not so credulous as to believe that these and other statements were due merely to the heat of trial, and the important question is whether in this particular case deference is again due the trial court's action and view that a new trial was not compelled. Compare: Polizzi v. Nedrow, Mo., 247 S.W.2d 809, 813, and Jackman v. St. Louis & H. Ry. Co., Mo.App., 206 S.W. 244.

The first objection came at the asterisks in the quotation: "I object to that as improper argument. We are not permitted to sue for that. * * * I request that be stricken." The court responded: "That

would be a separate case. Let's not argue it." The second objection, "I object to that," came at the close of the quotation and the reference to the "litigation she has in the Court House." Immediately the court ruled: "I'll sustain the objection." Upon request that the jury be instructed to disregard the improper argument the court said, "Overruled. Mr. James, however, I will ask you to omit reference to other cases." There were no other or further requests and some of the matters were not called to the court's particular attention in the motion for a new trial (Louis Steinbaum Real Estate Co. v. Maltz, supra) and, as indicated, there was some sustension of objection and mild admonition. Marler v. Pinkston, Mo., 293 S.W.2d 385. In short, as to all four of the assignments as to the cross-examination and argument, if there is a lesson in the cited cases and rules it is that they are sufficiently flexible to meet the exigencies of almost any situation, particularly instances of unfair trials resulting in manifest miscarriages of justice. Some deference is due the court's view that the argument did not demand the granting of a new trial. Polizzi v. Nedrow, supra. While liability and the plaintiff's right to recover was dependent for the most part on the jury's persuasion as to credibility, this was a simple case involving simple issues and in point of fact the question of negligence was not so close as to leave doubt as to the propriety of the jury's final verdict or to leave the lurking suspicion that the jury may have been unduly inflamed and influenced by improper extraneous evidence and argument. Compare: Dunn v. Terminal Railroad Ass'n of St. Louis, Mo., 285 S.W.2d 701, 709; Blanford v. St. Louis Public Service Co., supra.

■ A more technical aspect of the appeal is the plaintiff's claim that instruction two was erroneous in that (a) it was not supported by the evidence and (b) was indefinite, misleading, confusing and a "roving commission to the jury." The instruction began by hypothesizing the defendant's version of the occurrence, his traveling in the outside vehicular lane of 12th Street and that Mrs. Cammarata was traveling in the second lane and to the left of the truck and that as they entered the merging streets Mrs. Cammarata "suddenly and without warning turned her automobile to the right and immediately in front of and in the path of defendant's motor truck and stopped her automobile suddenly and abruptly immediately in front of defendant's motor truck, * * *." The objections are to the quoted portion of the instruction, particularly to the hypothesization that her stopping was "without warning" and subsequently in the instruction to "so turning and stopping" which she says was "one compound act of negligence" and was not supported by the evidence. The objection to "immediately in front of" is that the instruction does not pin-point the precise speeds and particularly the precise distances between the vehicles just before the collision and therefore was confusing, misleading, and lacking in specific direction.

As we view it the argument is based upon a narrow construction of the evidence and ignores the record's fairly permissible inferences. As we have said, Mrs. Cammarata claimed that at all times she was driving in the same traffic lane, the first lane, with and ahead of the truck and that as they approached the intersecting area of the merging streets the truck struck her automobile from the rear and bumped it twice. But the defendant's evidence was that she had been driving in the second lane, abreast of but to the left of the truck. The truck driver testified that as he started his truck forward into 13th Street "The first I seen was when she cut in front of me to go up to Thirteenth. * * * Well, my judgment was she cut across in front of me and went not hardly a car's length before she cut across the other lane. * * * She had been in the lane (to his left), and moved, she was angling over." The distance separating the two vehicles, he said, as she angled over into his traffic lane was "Well, I don't know, probably around

eight feet or something like that. * * * It was pretty sudden." He immediately applied his brakes and started swerving, but "I swerved just as I hit her, as she was stopped. * * * She was stopped when I hit her. * * * *She turned her right flasher light on just as she cut in there. * * * She was about eight feet from me, my judgment of it.*" The driver had slackened the speed of his truck but was then traveling at a speed of 12 to 15 miles an hour and unavoidably, according to him, the right front of the tractor struck the left rear bumper and fender of her 1956 Chevrolet.

Had the instruction hypothesized the timeliness of Mrs. Cammarata's right-turn signal it would have been more precisely accurate, but the truck driver's testimony certainly supports the inference and hypothesis that she "suddenly" and as far as he was concerned, "without warning," turned her automobile into the path of the truck and stopped and that it was then impossible for him to avoid the collision. In the circumstances it is not demonstrable that the jury was confused or misled by the force of the single word "immediately." In short again, there is no manifest error in the instruction "materially affecting the merits of the action" (V.A.M.S. § 512.160) and it may not be said upon the specific assignments that the plaintiff is entitled to a new trial. Patton v. Hanson, Mo., 286 S.W. 2d 829; Knox v. Weathers, 363 Mo. 1167, 257 S.W.2d 912. Compare Toburen v. Carter, Mo., 273 S.W.2d 161, 164, in which the instruction contained several errors and, among other things, hypothesized as negligence a distance of ten feet between the vehicles when in point of fact they were much farther apart and there was "an utter lack of any testimony as to the point when or where that process [defendant's stopping] began, or their distance apart prior to the moment plaintiff saw defendant's car in the process of stopping."

█ The respondent has filed what has come to be a routine motion to dismiss the plaintiff's appeal for the reason that her brief does not comply in every respect with the requirements of 42 V.A.M.S. Supreme Court Rules Rule 1.08. The respondent has filed a brief in which all the deficiencies have been supplied (Carver v. Missouri-K.-T. R. Co., 362 Mo. 897, 909, 245 S.W.2d 96, 100), the questions presented are readily understandable and the brief as a whole is sufficient to inform opposing counsel and the court of the essential merits of the appeal. The brief and its assignments of error are not such manifest violations of the rule as to demand a dismissal of the appeal and the motion is overruled. Lammers v. Greulich, Mo., 262 S.W.2d 861; Wipfler v. Basler, Mo., 250 S.W.2d 982; Ezell v. Kansas City, Mo., 260 S.W.2d 248; Tice v. Milner, Mo., 308 S.W.2d 697. Compare: Jacobs v. Stone, Mo., 299 S.W.2d 438, and Repple v. East Texas Motor Freight Lines, Mo., 289 S.W.2d 109.

For the reasons indicated the judgment is affirmed.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.