**Charles F. HOMEYER, Appellant,**

v.

**WYANDOTTE CHEMICAL CORPORATION, a Corporation, and Delbert Orcutt, Respondents.**

**No. 52366.**

Supreme Court of Missouri,

Division No. 1.

Dec. 11, 1967.

Edward O. Hancock, and Robert C. Brinkman, St. Louis, for appellant.

Murphy & Kortenhof, Edward E. Murphy, Jr., St. Louis, for respondents.

STORCKMAN, Judge.

This is an action for damages for personal injuries arising out of a collision of two automobiles. The plaintiff joined Delbert E. Orcutt and his employer Wyandotte Chemical Corporation as defendants in his suit for $65,000. At the close of plaintiff's case, the court directed a verdict for the defendant corporation and the jury returned a verdict against the defendant Orcutt for $350. The plaintiff filed a motion for a new trial on the single ground that the verdict was inadequate. The motion was overruled and plaintiff appealed. The defendant Orcutt is the only respondent on this appeal.

Since plaintiff's sole contention on appeal is that "under the law and evidence the verdict is inadequate", the facts relating to the collision will be stated only so far as they have a bearing on the plaintiff's injuries. The collision occurred about 4:45 p. m. on September 30, 1963, on U. S. Highway 70 in St. Louis County near the Cool Valley overpass. The plaintiff was driving his automobile west on Highway 70 at a speed of approximately 50 miles per hour. The day was sunny and the concrete pavement was dry. At the place in question, the highway decreased from three westbound lanes to two. As plaintiff approached the Cool Valley overpass, the traffic was light; he could see "it started to stop" and "getting ready to jam up". He applied his brakes and brought his car to a stop without hitting the car in front of him, but his car was struck from the rear by the auto-

mobile driven by the defendant whose car in turn was hit from the rear by another automobile. The defendant testified he was following the plaintiff at about 50 miles per hour, that plaintiff stopped suddenly and that he was unable to brake his car to a stop before colliding with the rear end of plaintiff's automobile. Plaintiff testified his car was knocked forward about six feet, that he was not knocked unconscious, he was not thrown out of his seat, he did not strike any part of the inside of the car, he was not cut or bruised and had no marks of injury on his person. The plaintiff got out of his car and walked back to defendant's car. The cars were moved off the traffic lanes and, in response to a call, police officers came and investigated the accident, but no arrests were made. The plaintiff testified he was "nervous and shook up", but he did not tell anyone at the scene of the accident that he had been injured.

Both parties were driving Chevrolet passenger cars. At the time of impact the front end of defendant's car was lower than usual and the rear end had risen due to the fact that the brakes had been fully applied and the car was sliding to a stop. In this posture the defendant's front bumper went under the plaintiff's rear bumper and the headlights, grill and radiator on defendant's car were damaged. A taillight on plaintiff's car was bent. He also testified the deck lid was sprung about an inch and the bumper was bent, but pictures of the rear of plaintiff's car, put in evidence by the defendant, did not show the damage claimed. Plaintiff also testified the damage to his car was very light and no repairs had been made except he replaced a bulb in the taillight for which no charge was made.

The plaintiff, forty-eight years old, had been a truck driver for twenty-one years and was employed by Associated Grocers as driver of a tractor-trailer. He drove his car home; he felt weak, his neck hurt, he started to get a headache and he laid down for about an hour. He went to work the next day at 4 a. m. and worked twelve

hours. He worked about ten hours the next day. He started to feel pain in his neck about three days after the accident and laid off for two days. He rested and saw his family physician, Dr. M. A. Diehr, for the first time. Other than this, he worked eight hours or more every working day up to the time of trial, almost three years later. His chief complaint was a pain in the neck which bothered him especially in turning to the right. He received treatments from Dr. Diehr three times a week for a year and a half and was given prescriptions. The visits were then reduced to two a week and then to one. He improved under treatment, but still had pain in his neck and periodic headaches. He was able to do everything he did before the accident; however, his neck pains when he turns around to see if the equipment is properly hooked up. Until the time of trial, the plaintiff had no idea how much Dr. Diehr charged for each treatment or what the total charge was. He had not received any statement. The doctor bill put in evidence was for $2,825 and the prescription cost was $165.82. There was no loss of wages and no claim for property damage.

Dr. Diehr was plaintiff's family doctor and had known him for about ten years before the accident of September 30, 1963. On October 5, 1963, Dr. Diehr gave plaintiff a general physical examination and took X rays. At that time there was a marked tenderness of the cervical vertebrae with pointed tenderness over the fourth, fifth and sixth cervical vertebrae and marked spasticity of the cervical muscles on either side of the cervical spine. Movement of the head forward and from side to side was limited and painful. Swallowing caused considerable discomfort. There was some tenderness and spasticity of the thoracic muscles. There was marked tenderness of the lumbar vertebra and muscles. Bending forward and side to side was limited and painful. His diagnosis was: Severe sprain of the posterior cervical region; sprain of the anterior cervical region; and sprain of the lumbar region of the back. He was

given medicine and instructed to use massage. On October 7, 1963, examination disclosed pain in the neck and swelling and pain in his lower back. There was indication of inflammation of cervical and lumbar joints and he administered injections. Plaintiff wanted to continue to work and in order to keep him on the job it was necessary to give him injections regularly. The treatments were given three times a week for a year and a half, then reduced to twice a week and later to once a week.

Dr. Diehr further testified that on May 2, 1966, examination showed some tenderness in right side of his neck when he turned his head to the right. This condition would make it more difficult for plaintiff to perform his duties as a truck driver. He will have some pain and discomfort from time to time and will require treatment for awhile. He treated plaintiff two hundred seventy times. His charge was $10 for each office call and cortisone injection. His first examination disclosed no bruises, lacerations or swelling but some spasticity and limitation of motion in his neck and back. Spasticity of the neck subsided within two to four weeks which was normal. After that the only findings were complaints of pain in the neck. The doctor testified his charges were reasonable and that nothing had been paid on the bill.

The X rays taken by Dr. Diehr on October 5, 1963, were negative for any broken bones or dislocations but did show a small amount of arthritis in the upper lumbar region of plaintiff's back and a little lipping in the lower part of his fourth cervical vertebra anteriorially indicating a small amount of arthritis. Dr. Diehr testified that arthritis sometimes causes a complaint in a person's neck and back. He had had the plaintiff under his care from time to time before the accident.

Dr. Lewis Reuter who examined the plaintiff for the defendant in January 1966 found no spasticity, no limitations on bending or turning, no complaint on pressure, and no evidence of disability. X rays taken by Dr. Reuter of the cervical vertebrae of plaintiff's neck and his lumbo sacral region also showed evidence of hypertrophic arthritis of long standing which would have been present before the accident. Otherwise the X rays were negative.

In a tort action the determination of the amount to be awarded for personal injuries is a matter resting primarily in the discretion of the jury in that it involves the credibility of witnesses and the weight and value to be given their testimony on a fact issue. Pinkston v. McClanahan, Mo., 350 S.W.2d 724, 729 [5]; Combs v. Combs, Mo., 284 S.W.2d 423, 425 [2]; Coghlan v. Trumbo, Mo., 179 S.W.2d 705–706 [4]. The trial court has a wide discretion in ruling a motion for new trial which alleges that the damages awarded are inadequate since that court may take into consideration the credibility of the witnesses and may weigh the evidence. Boehmer v. Boggiano, Mo., 412 S.W.2d 103, 110 [8]. The appellate court, however, may not pass on the weight of the evidence in reviewing the action of the trial court. Coghlan v. Trumbo, Mo., 179 S.W.2d 705, 707 [10].

Since the jury at the trial and the trial judge in overruling the motion for new trial have passed on the credibility of the witnesses and the weight of the evidence, the appellate court in reviewing the adequacy of the damage award must view the evidence in the light most favorable to the verdict. Boehmer v. Boggiano, Mo., 412 S.W.2d 103, 110 [7]; Brenneke v. La Chance, Mo.App., 396 S.W.2d 758, 760 [3]; Porter v. Smoot, Mo.App., 375 S.W.2d 209, 212 [4]; Polizzi v. Nedrow, Mo., 247 S.W.2d 809, 811 [2]. Where the verdict has the approval of the trial court, it is conclusive on appeal unless it is so shocking and grossly inadequate as to indicate that the amount of the verdict was due to passion and prejudice. Boehmer v. Boggiano, Mo., 412 S.W.2d 103, 110–111 [10].

There was no loss of wages in this case and no proof of damage in any

consequential amount to plaintiff's automobile. There was evidence on which the jury could reasonably find that the plaintiff was not injured as a result of the collision or very slightly. All of his symptoms were subjective; there were no visible signs of injury. The plaintiff did not tell anyone at the scene of the accident that he was injured. He did not file suit until July 23, 1965, almost twenty-two months after the accident. The plaintiff was the only person who actually knew if he had pain and suffering. The X rays taken by Dr. Diehr and Dr. Reuter disclosed evidence of arthritis and Dr. Diehr replied in the affirmative when asked if arthritis ever causes "any complaint in a person's neck and back." The fact of injury was contested throughout. Plaintiff's evidence was vague and uncertain in several respects. The burden was on the plaintiff to prove the fact of his injury and its extent. Edens v. Myers, Mo., 365 S.W.2d 559, 561 [1]; Schaefer v. Accardi, Mo., 315 S.W.2d 230, 232 [3]. His failure to persuade the jury is understandable from a reading of the transcript. The credibility of the witnesses for the plaintiff including the medical expert was primarily for the jury to determine. Chapman v. King, Mo.App., 396 S.W.2d 2, 34 [6]. On the evidence adduced, the jury could reasonably have found that plaintiff's complaints were largely attributable to a pre-existing arthritic condition. Boehmer v. Boggiano, Mo., 412 S.W.2d 103, 110–111 [9].

■ On the record before us, we must hold that the damages awarded are not inadequate and that the trial court did not abuse its discretion in overruling the plaintiff's motion for a new trial. Boehmer v. Boggiano, Mo., 412 S.W.2d 103; Boland v. Jando, Mo., 395 S.W.2d 206; Porter v. Smoot, Mo.App., 375 S.W.2d 209, Davidson v. Schneider, Mo., 349 S.W.2d 908; Grayson v. Pellmounter, Mo.App., 308 S.W.2d 311; Polizzi v. Nedrow, Mo., 247 S.W.2d 809; Coghlan v. Trumbo, Mo., 179 S.W.2d 705. In addition to Davidson v. Schneider, supra, the plaintiff relied on Pinkston v.

McClanahan, Mo., 350 S.W.2d 724, Underwood v. Brockmeyer, Mo., 318 S.W.2d 192, Ulrich v. Kiefer, Mo.App., 90 S.W.2d 140, Davis v. City of Mountain View, Mo.App., 247 S.W.2d 539, and English v. Thrower, Mo.App., 146 S.W.2d 667. All of these cases are distinguishable on the facts; they do not dictate a result contrary to the one reached.

The judgment is affirmed.

HENLEY, P. J., and SEILER, J., concur.

HOLMAN, J., not sitting.