SPERRY, Special Commissioner.

**Samuel CHAMBERLIN, pro ami, Plaintiff-Appellant,**

v.

**Johnny R. McELWEE, Defendant-Respondent.**

**No. 25447.**

Kansas City Court of Appeals, Missouri.

April 5, 1971.

Louis Wagner, Kansas City, for appellant.

Morris, Foust, Mody & Beckett, Walter F. Moudy, Kansas City, for respondent.

Plaintiff sued defendant for damages for personal injuries suffered when his automobile was struck by defendant's automobile. Plaintiff's car will be referred to herein as No. 2 car. On March 29, 1968, at a point in the southbound traffic lane, on Southwest Trafficway, No. 2 car was stopped in the west lane. Passengers in No. 2 car, in addition to plaintiff, were his mother, Mrs. Peck, his sister, Donna Chamberlin, Mr. Fox, and plaintiff's girl friend. All stepped out of the car except Donna. Mr. Fox was changing a tire and plaintiff and his mother were standing on the shoulder west of and near the car. At this time, defendant operated his car, No. 1, in such a manner as to cause its front end to strike the rear end of No. 2, propelling it southbound a distance of 199 feet, where it came to rest on the median strip. The front seat of No. 2 car was broken, as was the steering wheel. Donna, who was in the front seat of the car, suffered severe injuries, as did Mr. Fox. Plaintiff also claims to have suffered severe injuries. He obtained a verdict and judgment for $50.00, and appeals.

Defendant filed answer denying all allegations of plaintiff's petition. Plaintiff's single contention here is that the amount of the verdict is so small, under the circumstances, and the evidence, as to indicate passion, partiality, prejudice and bias; and that, therefore, it is our duty to reverse the judgment and remand the cause for another trial.

On December 9, 1969, at the beginning of this trial, the court announced that it "enters an order consolidating the four cases for the purpose of trial." (Apparently, the court referred to the cases of plaintiff, Mr. Fox, Donna Chamberlin and plaintiff's mother). At that time, defendant, by counsel, admitted, for the record, that defendant was negligent in causing the accident which is the subject matter of these lawsuits, and also admitted that Donna Chamberlin, now Donna Fox, and Terr-

ence Fox, sustained injuries as a direct and proximate result of such negligence. It is noted that defendant did not admit that plaintiff or his mother, Mrs. Peck, were injured.

When car No. 2 stopped, all passengers except Donna dismounted. She was seated behind the steering wheel when the collision occurred. Fox was tightening the lugs on the wheel. In his deposition, given several months prior to trial, plaintiff stated that he was standing on the right shoulder of the trafficway, four or five feet from Car No. 2. His mother was standing by him, and his girl friend was nearby. Plaintiff stated, in his deposition, that he was knocked, in some manner, off the shoulder and rolled down an embankment onto the pavement of the next street west, a distance of fifteen or twenty feet; that his mother was knocked down, also, and landed beside him. He testified to the effect that he arose and ran to learn about the condition of the others, that his left side was "tingling" and pained him. He stated that Donna was lying in the rear portion of Car No. 2; that the rear of that car was smashed; that the front seat was broken loose from its fastenings; that Fox was lying in front of Car No. 1 unconscious. He stated that several policemen arrived; that he was taken to General Hospital; that he told one policeman that he suffered pain, but that he did not know which officer he talked to. He was examined at General Hospital for two or three minutes, but he was not x-rayed or treated.

His testimony was that on April 3rd, 1968, he went to the office of Dr. Feierabend; that the visit was arranged by his mother and her attorney; that he was examined; that he told the doctor he had lost weight (27 pounds); that he had headaches, could not eat, vomited. He stated at the trial, December, 1969, that he had lost about thirty-seven pounds since the accident occurred; that Dr. Feierabend prescribed "stomach relaxers"; that he had a slight, scarcely noticable, bruise on his left side after the accident. Dr. Feierabend made no note of this bruise when he examined him five days later, and the doctor stated on the stand that, if plaintiff had, at that time, lost any considerable weight, it could not have been due to the accident.

Plaintiff stated that he saw Dr. Wolf two or three months later; that he had, at that time, lost weight, was nervous, could not sleep; that Dr. Wolf prescribed stomach and nerve relaxers; that he saw Dr. Feierabend again, in October, 1969; that he was losing weight; he was nervous; that, prior to the accident, he was in good health, except for asthma, weighed 180 pounds, and had no stomach trouble except occasional indigestion. He stated that he suffers from headaches two or three times per week; that, prior to the accident, he had occasional headaches, but not bad. He testified to the effect that after he left school he was employed at Western Electric plant; that he cleaned up the premises; that, at the time of the trial, he worked at another job; that he had passed a physical examination prior to such employment; that he had been rejected for military service solely because he suffered from asthma. He stated that he suffered stomach pains before the accident and took Pepto-Bismol and Maalox for relief. He stated that he told Dr. Feierabend, April, 1968, that he did not hurt his neck that he knew of, but that he had headaches.

Police officer Grove arrived at the accident scene shortly after its occurrence. He testified regarding the location of the two cars and concerning general conditions. He stated that Mr. Fox and Donna Chamberlin were sent to General Hospital for treatment for injuries of which they complained; that he made out an official report of the accident, as he was required to do; that he noted the above two persons were injured; that he was required to place on his accident report the names of all injured persons, listing the nature of such injuries; that he did not list plaintiff or his mother; that if either had complained of pain he would have listed their

names and the nature of their injuries; that no one was hit by No. 1 car.

Dr. Feierabend, an orthopedic surgeon, testified on behalf of plaintiff to the effect that he saw the plaintiff in his office on October 3, 1968; that he examined him; that he complained of trouble eating; that he vomited once but did not vomit blood; that he suffered from nausea and headaches; that he did not complain of neck pains; he tried traction on the patient without any result; that if he had suspected serious injuries to the neck he would have x-rayed immediately and probably performed a myelogram; that he would not have done a myelogram before taking x-ray pictures; that he did not x-ray plaintiff. However, he stated that, because plaintiff suffered from occipital headaches he suggested a myelogram. He stated that he did not see plaintiff again until shortly before the trial at which time he saw him at his office; that plaintiff stated that he was losing weight, that he had no appetite, suffered abdominal discomfort and occipital headaches. Witness found no numbness or pain in his limbs; there was a full range of motion in the neck; reflexes of upper left extremities were depressed. There was a sensory defect of the left ulnar; that the left hand was smaller than the right, indicating some atrophy. He recommended hospitalization to investigate the stomach complaint but doubted if it was due to trauma.

Defendant offered the testimony of Dr. Lichtor, a specialist in orthopedic surgery. He stated that if one suffers cervical strain (as Dr. Feierabend suggested here) there would be immediate evidence thereof, or within a few hours thereafter, through pain; that such pain would be more severe immediately after an injury than it would be some days later; that good medical practice is to take x-rays immediately; that he would not associate a neck injury, absent neck pains; that neck pains are also accompanied by physical evidence which an examining doctor can discover; that he would not recommend a myelogram for a patient who made no complaint of neck pains but only complained of headaches. He also examined plaintiff in the court room and stated that he found no evidence of atrophy of the left hand; that, in fact, the left arm is larger than the right, to which fact he called the jury's attention.

After judgment we will view the evidence in the light most favorable to the judgment. Homeyer v. Wyandotte Chemical Corp., Mo.Sup., 421 S.W.2d 306, 309. Considering the facts in evidence, the jury could have reasonably believed and found that plaintiff was standing on the shoulder of the street, some four or five feet from Car No. 2 when it was struck by Car No. 1; that, in some manner and due to the negligence of defendant, plaintiff was caused to fall and roll down an embankment, onto the pavement of an adjacent street; that he suffered a slight bruise on his side (although plaintiff alone testified to its existence); and that he suffered some pain. However, he ran to the scene immediately thereafter; he was examined at General Hospital within a very short time, but was not x-rayed or treated; the reporting police officer made no mention of injuries to plaintiff, although it was his duty to report the names of all persons injured; plaintiff was examined by Dr. Feierabend five days later and made no mention of physical *injuries* (only headache, nausea, etc.) suffered by him; the doctor did not x-ray him although he had in his office the necessary equipment therefor; plaintiff has since passed two physical examinations for industrial employment without mention of the accident; he was rejected for military service *solely* because of his asthma; Dr. Lichtor's testimony strongly indicated that plaintiff was *not seriously injured*, based upon plaintiff's own testimony and upon his examination in the court room. The jury could well have found that plaintiff suffered no serious personal injuries.

In plaintiff's motion for a new trial, he alleged that the verdict is against the evidence; is against the great weight of the

evidence; and is inadequate. The trial court overruled the motion.

In Homeyer v. Wyandotte Chemical Corp., supra, 309, the court said:

"Where the verdict has the approval of the trial court, it is conclusive on appeal unless it is so shocking and grossly inadequate as to indicate that the amount of the verdict was due to passion and prejudice."

We cannot say that the verdict is inadequate. The judgment is affirmed.

PER CURIAM.

The foregoing opinion by SPERRY, Special Commissioner, is hereby adopted as the opinion of the Court.

All concur.